## BANK OF MOBILE v. P. & M. BANK OF MOBILE.

1. An assignee of a promissory note, succeeds to all the rights of his assignor at the time of the transfer, and will be entitled to prior satisfaction, against a subsequent assignee of other notes, out of a fund provided for the payment of all the notes.

2. F and F being largely indebted to a bank, made an agreement with it, by which they conveyed certain property, and assigned certain promissory notes, for the payment of the debt, and obtained an exemption from suit for five years. Subsequently they transferred other promissory notes, to another bank, absolutely, in discharge of a debt owing to it. A fund was provided for the payment of the notes transferred to both banks, which being insufficient for the payment of all— Held, that the notes first transferred, were entitled to priority of payment, as they were stated in the agreement, to be transferred as collateral security money, F, F, and all the parties to the note being insolvent.

Error to the Chancery Court at Mobile.

THIS case grows out of the case of Cullum v. Erwin, administrator, 2 Ala. 452, and is a controversy between different assignees of notes executed to C. Cullum, and secured by a mortgage, for a priority of right, the fund not being sufficient to pay all the notes. The Planters' and Merchants' Bank, filed their petition asserting that their execution was prior in point of time, to that of the Bank of Mobile, and entitled them to priority of payment.

The matter was referred to the master, who reported, that of the five notes executed to Cullum, the first was transferred by Cullum to Edward Harding, that the other five notes, were afterwards transferred by him on the same day to Fontaine & Freeman. That a negotiation was progressing between Fontaine & Freeman, and the P. & M. B., from the 12th to the 14th of May, having for its object the transfer of two of these notes to the bank, and on the 14th June, 1838, the matter was finally consummated, and a deed of trust of that date

entered into, to carry into effect the agreement entered into the 12th and 15th of May.

On the 16th of June, Fontaine & Freeman addressed a letter to the Bank of Mobile, proposing to the bank to discount the two remaining notes, and to apply the proceeds to the payment of debts due and to become due, to the bank. On the same day the bank agreed to take the notes, and on the 18th of June the entries were made on the books of the bank, passing the proceeds to the credit of the respective accounts ; and that the P. & M. Bank was entitled to priority of payment.

This report was excepted to, upon the ground that the P. & M. Bank received the notes as collateral security only, whilst the Bank of Mobile received their's in absolute payment, and were therefore entitled to be preferred.

The Chancellor overruled the exceptions, and confirmed the report, from which this writ is prosecuted.

PHILLIPS, for the plaintiff in error, made the following points : The notes held by the Bank of Mobile, were indorsed in the usual course of trade, and it is a holder for value, whilst the P. & M. Bank hold under the covenant entered into with Fontaine & Freeman, on the 14th June, 1838, which shows, that these notes were held by the Bank as collateral security. The mortgage being a mere incident of the debt, passed absolutely to the Bank of Mobile, whilst the transfer to the P. & M. Bank was upon a contingency, which might never happen, and was suspended for five years. [Bank of Mobile v. Hall, 6 Ala. Rep. 639, and Andrews & Bro. v. McCoy, 8 ib. 920.]

Fontaine testified that no settlement had ever been made, but this was a matter not put in issue by the petition, and in the absence of any allegation of continuing indebtedness of F. & F. such proof was improperly admitted, not being put in issue.

The evidence of Fontaine properly understood, justifies the inference that the Bank of Mobile received these notes on the 13th June, and his books coincided with his recollection of the date. It is true, the resolution on the books of the Bank is dated the 16th June, but it is evident there had been

a previous agreement, and this was the mere formal consummation, as the letter of F. & F. to the Bank, speaks of the notes then in their possession.

The facts show that no priority was intended to be given to the P. & M. Bank. F. & F. are at the same time in communication with both banks; with the P. & M. Bank for their liabilities as indorsers, with the Bank of Mobile for their own debts—they transfer to the latter the notes first falling due; it is absurd to suppose they intended to give the P. & M. Bank a preference. If there is any priority, it is the result of accident.

This court has never yet gone so far as to hold, that the priority acquired by an assignee, could be transferred—and the difficulty and embarrassment to which it would lead, is a strong argument against it.

CAMPBELL, contra. This case was fully decided when it came to this court at a previous term. [4 Ala. Rep. 452.] The court very fully enters into the question of the equities of the respective assignees, and lays down a definite rule for the adjustment of the priorities.

The court in its opinion says, " Fontaine & Freeman, by the assignment to them of the residue of the debt by Cullum, became invested with all the rights of the latter, and according to the principles here laid down, might have given both their assignees equal rights in the mortgage, or they might have given to either a preference." What are these principles, that the assignee who comes to a portion of the debt is entitled to a priority of payment, and that the assignee, or grantee, of a portion of the mortgaged estate, is entitled to discharge that portion, whilst any of the remainder of that estate is in the hands of the mortgagor, or a subsequent assignee.

When the notes came to the hands of Fontaine & Freeman, they stood in the same condition as if they had been the payees of the notes, and the grantees in the mortgage. Their assignees were subject to the same rules of equity, as those of Cullum would have been. [6 Paige, 35.]

The argument that the assignment to the P. & M. Bank is not upon a valuable consideration is not true in point of

fact. It gave a large and valuable consideration, surrendering their claim for tens of thousands of dollars, and giving time on the residue.

The whole doctrine is equitable, and we bring ourselves within the rule, that where equities are equal, that which is prior in time is the strongest. [6 Paige, 35; 1 Id. 135.]

ORMOND, J.—The law of this case was settled when it was last here. [Cullum v. Erwin, 4 Ala. Rep. 452.] It was then held, in reference to this very controversy, that where several notes secured by the same mortgage, are assigned at different times, if the fund arising from the sale of the mortgaged premises is not sufficient to pay all the notes, the assignees will be entitled to priority of payment, in the order in which the assignments were made, and not according to the time of the falling due of the notes, unless the assignee, at the time of the assignment, gave a preference to one or more over the rest.

It is now contended, that this right will not pass with the note to a second assignee, but we can perceive no reason whatever for thus limiting it. The right to satisfaction out of the mortgaged property, in preference to a subsequent assignee, having attached to the note by the prior assignment, will follow the note in the hands of a succeeding assignee. The assignment transfers all the rights of the assignor, and by necessary consequence, transfers the right of prior satisfaction. A court of equity will always give effect to an assignment, and regards the assignee as standing in the place of the assignor, succeeding to all his rights, and exposed to all his disabilities.

Priority of right of satisfaction, results as a legal inference from priority of assignment, and can only be repelled by showing affirmatively, that no such priority of right was intended to be conferred. The facts of this case do not repel this legal inference. They show conclusively that the assignor had a much deeper interest in effecting the arrangement with the P. & M. Bank, than with the Bank of Mobile; as by the former they were to be released from the payment of $69,000, and were to obtain five years for the payment of the residue of the debt; and it was not until this arrangement

.was effected, that the proposition was made to the Bank of Mobile. It is not however at all probable, that the question of priority was considered by any of the parties at the time, as there was then a valuable hotel on the premises, since destroyed by fire, the destruction of which, by reducing the value of the security, has given rise to this question; and assuming it to be entirely accidental, that the first transfer was made to the P. & M. Bank, the principle is not thereby varied. It is the established maxim of a Court of Chancery, that when equities are equal the oldest will prevail. *Qui prior est in tempore, potior est in jure.*

It is further urged, that the transfer to the P. & M. Bank of these notes, being as collateral security only, was not a transfer in the usual course of trade, and must be postponed to the Bank of Mobile, which received the notes transferred to them absolutely, in payment of a debt.

Fontaine & Freeman being indebted to the P. & M. Bank, upon indorsements, in the sum of $138,000, made an arrangement with the Bank, to pay one half of this amount in five years, for which they executed their notes; the Bank releasing them from the payment of the residue. To secure the Bank, F. & F. conveyed by deed, all their interest in a certain deed of trust, executed by S. Andrews, with authority to collect the rents, &c., and transferred to the Bank, the two notes in controversy, together with another note, to be held as collateral security; and with authority to the Bank to collect the money and apply it to the payment of their debt to the Bank, of $69,000. The Bank had no authority to sue F. & F. on their notes, until the expiration of five years from the date of the deed. No settlement has ever taken place between F. & F. and the Bank. Fontaine has taken the benefit of the bankrupt law, and Freeman and Cullum, as well as the makers of the notes are insolvent.

In our judgment, the doctrine here relied on, does not apply to this case. It is certainly true, that when a negotiable security has not been taken in the usual course of trade, it is subject to all the equities existing between the original parties to it. [Bank of Mobile v. Hall, 6 Ala. Rep. 643.] No such question arises here, as none of the parties to the notes

have any defence against it. The only question here, is, which of the two contending parties has the prior right to satisfaction out of the fund provided for the payment of all the notes, and its solution depends upon priority of transfer, and right to collect and appropriate the proceeds. With the disposition of the proceeds when collected, the Bank of Mobile has no interest, or concern, unless, indeed, the money, when collected, was to be paid to Fontaine & Freeman. But by express stipulation between F. & F. and the P. & M. Bank, it is to go in payment of the debt due by them to the Bank; and although called in the agreemant a collateral security, yet, when collected by the Bank, it would clearly be a payment to that extent, of the debt of F. & F.

Nor is it possible, that any subsequent event, could revest in F. & F. the right to this money. There has been no settlement between them and the Bank, of this transaction; nor is there the remotest probability that there ever will be, as Fontaine is a certified bankrupt, and all the other parties are admitted to be insolvent. But if this were not the fact, the P. & M. Bank has a clear right under the agreement by which it received the notes, to apply the proceeds in payment of the debt of F. & F.; and if the receipt of this money should leave any other property conveyed by F. & F. subject to their demand, although it might entitle the Bank of Mobile to be subrogated to their rights, it would not affect the right of the P. & M. Bank to make the appropriation.

No such contingency is hinted at, in any part of the case, as within the limits of probability, and this is evidently a struggle for a plank in the general wreck of the fortunes of all the parties. This view of the case, which to our minds is perfectly conclusive, dispenses with the necessity of our considering whether the transfer to the P. & M. Bank was in the usual course of trade, so as to preclude the maker from availing himself of an equity existing between him and the payee. Our conclusion is, that the decree of the Chancellor must be affirmed.