Nelson and Hatch v. Dunn et als.

---

## NELSON AND HATCH v. DUNN ET ALS.

1. If a bill is wanting in equity, the chancellor may dissolve the injunction, in vacation, after the coming in of the answer, notwithstanding all its allegations are therein admitted.

2. A cross bill, formal in  other  respects, but which omits  the prayer, that it be allowed as such, and heard with the original bill, is amendable, and, on an application to the chancellor, in vacation, to dissolve the injunction, should be regarded by him, *pro hac vice*, as amended.   Such bills are treated with greater indulgence than original bills.

3. A cross bill is a mode of  defence, and  is dependent on the original bill, forming with it, but one suit, and, although its allegations must relate to the subject matter, it is not restricted to the issues, of the original bill

4. It is not necessary, that a cross bill should alledge any ground of equity

as against the complainant in the original bill, to give the court jurisdiction.

5. If a party having a defence, which is available, either in a court of law, or a court of equity, elects to assert it in the former, and fails, he is concluded thereby from insisting on it, in the latter tribunal, unless he can show some special ground for its interposition, such as, fraud, or accident, unmixed with negligence on his part, by which it was rendered unavailing : but an unsuccessful attempt to assert, in a court of law, a defence purely equitable, is not an estoppel in a court of equity.

6. It is a general rule, that where a court of law has first taken cognizance of a matter, of concurrent jurisdiction, a court of equity cannot interfere : but if the plaintiff at law files his bill, and submits the matter in controversy to a court of chancery, such court, the defendant not objecting, will retain jurisdiction of it, and proceed to do full justice between the parties.

7. If a complainant in a bill admits an indebtedness by him to the defendant, a court of equity will not become active in his behalf, unless he pays, or offers to pay it, as the court may direct; but in a bill for an account, it is not necessary, that the complainant should offer to pay whatever balance may be found against him.

8. Where N. and H. purchased from A. H. a plantation and slaves, and executed to him their notes, and a deed of trust, on the property, to secure their payment, and A. H. assigns a part of said notes to D., in trust, to secure certain debts, due by A. H. to sundry creditors, and N. becomes the *bona fide* holder of a portion of the debts, to secure which said notes of N. & H. were assigned by A. H. to D., and D. sues N. & H. on said notes, a court of chancery, on a bill, filed by N. & H. against D., will restrain him from collecting out of them, such portion *of said* notes, as when collected, D. would have to pay over to N.

9. Where several notes, secured by deed of trust, are assigned by the payee, to different persons, at different times, the assignment of each note is, *pro tanto*, an assignment of the security ; and the liens of the several assignees are to be preferred, according to the priority of the assignments, without reference to the maturity of the notes.

10. If N. & H. have *two* funds, as security for their debt, D. having an interest in *one only*, can compel N. & H. in equity, to resort to the *other* fund *first*, if it be necessary to do so, for the satisfaction of the debts of *both*.

11. If N. & H. sell property, which is subject to two incumbrances, *to C.*, the *junior* incumbrancer, in extinguishment of C's lien, this will not defeat the right of the *senior* incumbrancer, to have satisfaction of the property, more especially, if C. purchase, with actual notice of the prior equity.

12. A voluntary assignment, by a debtor, to a trustee, for the security of debts, is invalid to pass the title of the property to the trustee, until it is assented to, either *expressly or impliedly*, by the creditors, whose debts it is intended to secure.

13. If a creditor, for whose benefit, an assignment is made, dissents from it

and subsequently, by a new and distinct arrangement with the assignor, acquires the right to dispose of the subject of the trust, his title will vest from the date of such arrangement, and cannot be extended back to the date of the assignment, so as to overreach an intermediate equity.

Appeal from the decree of the Hon. J. W. Lessesne, in vacation, sitting for the Third District, Southern Chancery Division, dissolving an injunction.

Dunn, filed a bill in the chancery court of Sumter, against the appellants, and McCain and Kendricks, in which he states, that about the 15th of June, 1840, Alexander Henderson, sold to Nelson and Hatch, a plantation and negroes, for upwards of $81,000; for the payment of which, they executed eleven promissory notes: the first, payable on the 1st of May, 1841, and the rest falling due annually, from that time to the 1st of May, 1851, and to secure the payment of these notes, executed a deed of trust upon the property, to Kendricks, as trustee. That Henderson, shortly afterwards, assigned to Dunn the fourth, fifth, sixth, and seventh notes, in the order of maturity mentioned. That Nelson and Hatch, had paid one or more of the other notes, and prays discovery. That after the assignment of the four notes to Dunn, Henderson became greatly embarrassed, and to place the other notes, not assigned or paid, in a condition for his own benefit, or that of his friends and relatives, and amongst the rest, for the benefit of Joseph W. Chalmers, or his wife, who was a daughter of Henderson, assigned, or professed to assign, the other notes. That some of these notes were assigned to Chalmers, and one of them to McCain; but charges that these assignments are invalid, and of no avail against Dunn, or the claims he holds. That Henderson died intestate, and there is no administrator upon his estate. That the trust fund is insufficient to pay all the notes remaining unpaid, and that Dunn is entitled to be preferred, in the application of the trust fund. That Dunn had instituted suits on two of the notes assigned to him, and the other was not due. That these suits were pending, and Nelson and Hatch were defending them, and setting up, by way of offset or defence, counter claims against Henderson, for failure of title in some of the lands sold by him; for defects in some of the negroes, and for money paid for Hender-

son. That if these defences existed, they had been allowed when the two notes which had been paid, were taken up. That if Nelson and Hatch were entitled to any deduction, it should be restricted to the notes they had taken up, or to the notes in the hands of Chalmers and McCain, or charged upon the whole number of notes given on the purchase, or else upon those remaining unpaid; whereas Nelson and Hatch, were endeavoring to set up the whole against Dunn: and, that Kendricks, the trustee, refused to execute the trust, and had relinquished it. Nelson, Hatch, Chalmers, McCain and Kendricks, are then specially interrogated, amongst other things, how, when, for what consideration, and under what circumstances, Chalmers, and McCain, came into possession of the notes they held; and the bill concludes with a prayer for the appointment of a trustee, to execute the trust: that the trust should be executed, and the trust fund marshalled, and for full discovery, and general relief.

Nelson and Hatch answered the bill, admitting the purchase of the property, the execution of the notes and deed of trust, and the assignment of the four notes to Dunn; but insisting that the assignment was merely collateral, and to secure the payment of certain debts of Henderson. They also admit they have paid the first two notes that fell due, but paid them in cash, to *bona fide* holders, by transfer from Henderson before Dunn's assignment; and they deny that they had paid them to Henderson, or that any abatement or offset, which they had, was deducted: but insist on the contrary, that before they knew of their defences, and before they had notice of Dunn's assignment, they had promised to pay these notes to holders of them by transfer from Henderson, though they paid them in pursuance of that promise, after notice of the assignment to Dunn.

They further answer, that they know nothing, of their own knowledge, of the assignments of the other notes, but were informed by Chalmers and McCain, in the latter part of the year 1840, that they were the holders of the other notes, and looked to them for payment. They also admitted, that three of the notes assigned to Dunn, were due and sued on, and that the other was running to maturity, but deny that Dunn was entitled to be preferred in the application of the

trust fund. They also admit, that they were defending the suits, and had valid defences: which defences they state to consist in the payment of a large amount to relieve incumbrances on the land, of which they knew nothing when they purchased it: in the loss of a valuable portion of the land purchased, by eviction under a paramount title: in the unsoundness of some of the slaves: in the payment of a large sum for Henderson on a debt for which Nelson was liable as Henderson's surety before the purchase, and in other offsets, amounting in the whole to a very large sum: (the amount of each item being particularly stated in the answer.)

They further answer, that in May, 1844, they sold their interest in the trust property to Chalmers, and took up the last four notes that were running to maturity: but respondent Nelson, was to keep possession of the property, until, from the proceeds of the farm, he could pay the notes held by Dunn and McCain, or such part of them as might be due after deducting the offsets and deductions held against them, and all other liabilities which Nelson and Hatch were under, on account of the purchase.

Chalmers also answered, to the same effect as the answer of Nelson and Hatch, as far as it goes; and in addition insists, that Dunn received the notes he held, from Henderson, on the 1st of October, 1840, to collect, and when collected, he was to apply the proceeds to the payment *pari passu* of certain debts of Henderson, several of which Nelson himself had taken up. That on the 9th of November, 1839, Henderson purchased slaves of him to the amount of $10,800, and gave his notes for them, payable in three equal annual instalments: he was also indebted to him for the hire of negroes, &c. to the amount of $2,500. That in the month of June, 1840, Henderson informed him of the sale he had made to Nelson and Hatch: that he feared he was rendered insolvent, by the failure of a firm, of which he was a member, and that he had assigned to R. W. Thomas, the last four of Nelson and Hatch's notes that were to be paid, to pay the debt due by him to Chalmers, and other creditors. That in October of the same year, he being dissatisfied with Henderson's arrangement, and alarmed for the safety of his debt, and Tho-

mas declining to act as trustee, it was agreed that Chalmers should receive the notes which Thomas held, to pay his debt, and the other debts secured in the assignment to Thomas; and that in pursuance of this arrangement, Thomas, in the presence of Henderson, delivered the notes to him (Chalmers) as his own property, subject to the said agreement. He denies, that Henderson, or any of his friends or relatives, have any interest in these notes, and insists that, on the contrary, he has had the entire control of them, until they were surrendered to Nelson, when he purchased the interest of Nelson and Hatch, in the trust property.

The answer of Kendricks, the trustee, which was also filed, is not material.

McCain also answered the bill, admitting the purchase by Nelson and Hatch, the execution of the notes, deed of trust, &c.: and denying any knowledge of any transfer or assignment of any of the notes, except the one he holds; which he says he holds as agent of Nicholas L. Williams, to whom it was transferred and conveyed by Henderson, by a deed of trust executed on the 1st of September, 1840, to secure a number of *bona fide* creditors therein mentioned.

On the 15th of June, 1847, the chancellor decreed, that a trustee be appointed to execute the trust: that it be referred to the master, to inquire and report a proper person for this purpose: that as soon as the cause should be at issue, the master should inquire and report of all the matters involved and in issue in the case, and take and report an account.

Notwithstanding these proceedings in the chancery court, Dunn continued his proceedings at law, on the three notes in suit when the bill was filed; had sued on the other note which matured afterwards, and at the November term, 1847, of the circuit court of Sumter, had obtained judgments on the three notes first sued on, for $22,129 50, on which executions had been issued, and the money about to be collected out of Nelson and Hatch.

Thereupon, Nelson and Hatch, and Chalmers, filed a cross bill against Dunn and McCain, setting forth the foregoing proceedings, and in addition thereto, stating, that at the time Nelson and Hatch purchased the plantation and slaves of Henderson, and as a part consideration of the notes given,

Henderson sold them an eighty acre tract of land, which was intended to be inserted in his deed to them for the property purchased, and intended to be conveyed thereby; but which, by mistake, was omitted from the deed. That this land was recovered of them in the same action in which a recovery was had, as stated in the answer of Nelson and Hatch to Dunn's bill, as to both of which parcels of land, Nelson and Hatch were evicted by a title paramount to that of Henderson. That this land, which by mistake was not conveyed in Henderson's deed to Nelson and Hatch, and the other which was, and which was also recovered, formed a valuable portion of the plantation purchased of Henderson, and by reason of its being heavily timbered, (while the rest of the plantation had little or no timber upon it,) the value of the whole plantation was lessened, at least to the amount of $4,000. That when Nelson and Hatch filed their answer to Dunn's bill, they knew this land was omitted from Henderson's deed by mistake, but did not insist on it as a defence, because they were under the impression that the facts were not susceptible of proof, and for that reason, they were advised by their counsel, who drew their answer, that it would be useless to insist on it as a defence: but since that time, they have ascertained that the facts are susceptible of proof. That Dunn is not the holder of the notes assigned to him, by Henderson, for a valuable consideration: but took them to collect, and apply the money when collected, to the payment of certain debts of Henderson, a large amount of which Nelson himself had taken up since the assignment to Dunn: and that Dunn did not give any new consideration for the transfer of said notes, nor take them in satisfaction of any debt, nor release any right, as a consideration of the transfer. That the debts secured in the assignment to Dunn, which have been paid or acquired by Nelson, are expressly provided to be paid from the fund assigned to Dunn, and it would be unjust and oppressive, to compel payment of so much of that fund, as Nelson would be entitled to from it. That on one of the debts secured in the assignment to Dunn for $5,000, there is really only about $1,000 due. That the losses by reason of the failure of title to the land, amount to $6,589: the liens on the other land, removed by Nelson and Hatch, to $2,172:

and the amount coming to Nelson out of the fund assigned to Dunn, to $10,667 38: and that the complainants are unable to ascertain whether Nelson will be entitled to the whole amount of the claims embraced in the assignment to Dunn, which he has taken up, or acquired, or only to a *pro rata.*

The cross bill prays a discovery of the equities of the parties, of the amount really due on the $5,000 debt in the assignment to Dunn, and to be paid out of the fund to be collected of Nelson and Hatch: for an injunction restraining Dunn, from proceeding in his action at law on the note in judgment, and from collecting the sum of $12,935, on the judgments which he has already recovered, until the account prayed for by his bill, and decreed thereon, is taken, and that an abatement from the amount claimed by Dunn, or Dunn and McCain, to the extent of the rights of Nelson and Hatch, and Nelson alone, may be allowed.

The answer of Dunn admits all the allegations of the cross bill, except that of the omission of the land from Henderson's deed, and as to that, he says he knows nothing. But he insists, that all the offsets and abatements, claimed by Nelson and Hatch, except that, were litigated, and determined against them in the suits at law, and refers to a copy of the record attached to his answer, to show that fact: (upon reference to that record, however, no such fact appears, as far as the land losses are concerned.) And he insists also, that the transfer of the notes to him was prior to the transfer to Chalmers.

Upon this state of the case, Dunn, made a motion in vacation to dissolve the injunction, and the chancellor granted the motion.

From the order of the chancellor dissolving the injunction, Nelson, and the other complainants in the cross bill, prayed, and now prosecute an appeal to this court.

R. H. Smith, and Reavis, for the appellants.

First. After the decree in favor of Dunn, the defendants had an interest in it, and Dunn could not dismiss the bill: neither had he any right to proceed at law for the same matter: if he does so, the chancery court will restrain him by injunction. Mocher v. Reid, 1 Ball & Beat. 145, top page;

The Matter of Hemiup, 2 Paige, 316; 1 Vesey & Beames, 313; 8 Vesey, 520; 4 Bro. Ch. Rep. 162; Lashly v. Hogg, 11 Vesey, 602; Turnipseed v. Crook, 8 Ala. R. 897; 4 John. Ch. Rep. 636.

Second. An injunction cannot be dissolved on motion, upon matters not responsive to the bill. McNamara v. Irwin, 2 Dev. & Bat. 19; Minturn v. Seymour, 4 Johns. Ch. Rep. 497; 1 Dev. & Bat. Eq. Rep. 38; Lindsay v. Etheridge, 1 Dev. & Bat. 38; McClure v. Colclough, 6 Ala. R. 492.

Third. The denial of the facts stated in the bill, to authorize the dissolution of an injunction, must be positive. Calhoun v. Cozens, 3 Ala. R. 498; 3 Dan. Ch. Prac. 1831, and cases in note 1.

Fourth. On a motion to dissolve an injunction, the *facts* set forth in the answer are alone to be regarded, not the *opinions* of the defendant. 1 Bland. 335.

Fifth. An injunction cannot be dissolved in vacation for want of equity, but upon the denials of the answer alone. Clay's Dig. 358, § 82.

Sixth. If the irresponsive allegations may be considered, the record of the trial of the suit at law, referred to in Dunn's answer, does not show, as he avers, that the losses by reason of the failure of title to part of the land, and the removal of incumbrances from it, were involved or passed upon, in the litigation at law; this averment, therefore, can have no influence. McClure v. Colclough, 6 Ala. R. 492.

Seventh. It is not necessary that the cross bill should contain equity. 3 Dan. Ch. Prac. 1746, and cases referred to in note 1, on p. 1747; 6 Monroe, 119; 3 Dan. Ch. Pr. 1744.

Eighth. The cross bill has abundant equity, as the following propositions will demonstrate:

1. As Dunn admits, in his answer, that he holds the notes assigned to him as collateral security for debts of Henderson, he holds them subject to the same defences arising out of the *consideration* of the notes, as if they were still in the hands of Henderson himself. Cullum v. Br. Bank, 4 Ala. R. 22; 6 ib. 643; 8 ib. 920; 1 S. & P. 107; 5 Mason, 214.

2. The loss of the land conveyed by Henderson, and the discharge of incumbrances upon it, can only be compensated

in equity. Cullum v. Br. Bank, 4 Ala. Rep. 22; Andrews & Bro. v. McCoy, 8 Ala. Rep. 930.

3. Such is the case also, in regard to the land omitted from Henderson's deed by mistake, and this, though Henderson is insolvent, or not. 1 Dev. Eq. Rep. 379; 3 Johns. R. 506.

4. Henderson was insolvent when the notes were assigned to Dunn, as is shown by Dunn's answer: as far, then, as the debt is concerned for which Nelson was liable as Henderson's surety, before the assignment to Dunn, is concerned, an equity attached before the assignment, which became perfect as against Dunn, by the subsequent payment. Tuscumbia R. R. Co. v. Rhodes, 8 Ala. R. 206.

5. As this defence can only be made in equity, (8 Ala. R. 929,) Nelson's right is not affected by the unsuccessful attempt to make it available as a set-off at law. Calloway v. McElroy & Hannagan, 3 Ala. R. 406. And this rule applies also to the land losses, even if any effort had been made to use them as a defence at law.

6. Nor does it make any difference, that the judgments at law have been affirmed by the supreme court. McClure v. Colclough, 5 Ala. R. 65.

7. The assignment to Thomas for the benefit of Chalmers, having been made in June, 1840, of the note McCain holds in September, 1840, and of the notes to Dunn in October, 1840, the land losses and the Physioc debt, must fall upon Dunn, he being the last assignee. Cullum v. Erwin, 4 Ala. R. 452; Andrews & Bro. McCoy, 8 Ala. R. 930; Nelson et al. v. Dunn, at the last term.

8. If this position is not true, the priority of assignment only controls the rights of the parties in marshalling the trust fund: and if they all, in other respects, stand in *equali jure*, the loss by reason of the failure of consideration, should be borne equally by all the assignees. Andrews & Bro. v. McCoy, 8 Ala. R. 930.

9. Nelson is entitled to a large amount of the debt which Dunn is seeking to collect from him: Dunn admits this in his answer: now it is evident, that it would be grossly unjust, and ridiculous, to permit Dunn to collect money out of Nelson, which he would be liable immediately, to refund to him. To prevent such injustice and injury, a court of chan-

cery will interpose by injunction. Poor v. Carleton, 3 Sum. 75, 76; note 1 to 3 Dan. Ch. Prac. p. 1831.

10. The trust property is not liable to be sold under the executions, without the consent of the beneficiaries, but the property of Nelson and Hatch is: they have an interest, therefore, in reducing the debt as much as possible: besides, Nelson is bound by his contract with Chalmers, to avail himself of his defences against the outstanding notes.

11. Chalmers is interested also in charging the offsets and failure of consideration upon Dunn: and either upon this ground, or because he is the first assignee, and has a priority over Dunn in marshalling the trust fund, might maintain the injunction against Dunn, alone, until their respective rights are settled in the chancery suit begun by Dunn.

12. To dissolve this injunction, would in effect, be to pass a decree upon the merits of the original cause, before any proofs have been taken in it, and before the master has made a report in pursuance of the decree.

HOPKINS, contra.

The right of Dunn to maintain the suits at law is a legal question. The cross bill being for relief, as well as for recovery to the extent of the relief sought, it is an original bill, and no relief can be granted which is not equitable. Story's Eq. Pl. 317, § 398.

The cross bill is for relief upon matter which might have been determined in the suits at law, and against judgments at law. 5 Porter, 547; 2 Ala. Rep. 21; 7 Porter, 553; 8 ib. 432; 6 ib. 27; 3 ib. 436; 7 ib. 86; 1 Ala. Rep. 351.

A cross bill is a defence merely to the original bill, and must be confined to the matter in issue in the original bill. Hop. C. R. 58. The value of the land, therefore, which by mistake was not conveyed to Nelson and Hatch, cannot be noticed by the court, because not set up as a defence in the answer to the original bill. 8 Porter, 432; 7 id. 86; 7 Ala. 233.

A bill cannot be treated as a cross bill, unless the complainants pray that it may be heard at the same time as the original bill. 7 Ala. 233; 1 Edwards, 226.

The contract entered into by Chalmers with Henderson,

after the deed executed by Henderson to Thomas, for the benefit of Chalmers, was an abandonment of the prior contract entered into with Thomas. 2 Call's Rep. 103; 150. The equity of Dunn being therefore prior to that of Chalmers, will be preferred. 4 Ala. R. 452; Hop. Ch. Rep. 569; 10 Peters, 177.

CHILTON, J.—Before proceeding to notice the main points so elaborately discussed at the bar, we will briefly dispose of some objections made to the frame of the cross bill, and questions of practice, as to the dissolution of injunctions by the chancellor in vacation.

1. We need not examine the question, whether the defendants to the original bill acquired such an interest in the decree appointing a trustee, and ordering a reference to the matters of account to the register, as would prevent the complainant in that bill from dismissing it. The record shows, that although Dunn has instructed his counsel to dismiss it, the bill was pending when the motion was made to dissolve the injunction in this case, and we will so regard it, for the purposes of this trial.

2. We do not agree with the counsel for the plaintiffs in error, that the chancellor in vacation has no power to dissolve an injunction, except upon the denials of the defendants' answer.

The statute (Digest, 358, § 82,) requires that the answer must be filed, before the chancellor in vacation can dissolve, but after it is filed, the chancellor should look to the whole case made by the pleadings, and if the bill contain no equity, dissolve the injunction, although the answer admits its allegations.

3. The defendants' counsel insists that the injunction was properly dissolved, as the paper purporting to be a cross bill, contains no prayer that it be allowed as such, and heard with the original bill.

The authorities on which he relies, (7 Ala. 233, and 1 Paige, 226,) show, that the court may refuse to treat the pleading as a cross bill, in the absence of such prayer. But this is an objection to mere matter of form, which is clearly amendable, and which the chancellor should not regard,

upon an application to dissolve the injunction in vacation. The frame of the bill gives indubitable proof of its character, and as the chancellor *in vacation* had no power to allow the amendment, he should have considered it as amended. It would seem, that cross bills are treated with greater indul- gence than original bills. In Severn v. Fletcher, 5 Sim. 457, an amendment was allowed, changing the character of a cross bill for discovery only, to one for relief.

4. The counsel for the appellees further insist, that there is no equity in the cross bill, so as to authorize an injunction, or to afford ground for relief. That the defences set up are of a legal character, and are concluded by the judgments at law : or if not of that character, they are wanting in equity —hence, for this reason, the injunction was properly dis- solved.

A cross bill is a mode of defence, to which a defendant re- sorts when he seeks some discovery, or asks relief touching the subject matter of the original bill. It is treated as an auxiliary suit, forming, with the original bill, but one cause or suit. 7 Johns. Ch. Rep. 252; Story's Eq. Pl. § 399; Dan. Ch. 1742. It is true, the allegations of the cross bill must relate to the subject matter in controversy in the ori- ginal bill ; but the rule does not, as is supposed by the coun- sel, restrict its office so as to confine it to the issues in the original cause.

Thus, a cross bill has been allowed to answer the purpose of a plea *puis darrein continuance* at the common law. Mitford's Eq. Pl. 82; Story's Eq. Pl. § 393; Dan. Ch. Pr. 1743.

So also, for obtaining an equitable set-off, (4 Met. Rep. 104;) and to rescind a contract, where the original bill sought to enforce a lien for the purchase money. Wickliffe v. Clay, 1 Dana, 589. Or to establish and confirm a con- veyance, where the original bill sought to set it aside. 11 Wheat. Rep. 446; Dan. Ch. Prac. 1744.

These authorities may suffice to show, that Nelson and Hatch may well set up the defences they attempt to make, so far as the frame of the bill is concerned. That some of their counter claims, or deductions, are cognizable at law,

can make no difference.    They are connected with the matter of the original bill.    Hume v. Long, 6 Monr. Rep. 119;
Clay v. Wickliffe, 1 Dana's Rep. 589.

The complainant in the cross bill, as against the complainant in the original bill, is not bound to show any ground of
equity to support the jurisdiction of the court.    4 Met. Rep.
104; Dan. Ch. Prac. 1747; Story's Eq. Pl. § 399.

5. As to the conclusive character of the judgment at law,
against Nelson and Hatch, the general rule undoubtedly is,
that if a party has a right either to defend at law, or proceed
in a court of equity, and he elects to make his defence in the
law court and fails, he is concluded by the judgment of that
court, unless he can show that he is entitled to overhaul the
judgment in equity upon some special ground, such as fraud
or accident, unmixed with his negligence, by which a valid
defence was rendered unavailing.    Our own reports abound
with authorities upon this point.    This rule deprives Nelson
and Hatch of the benefit of all such legal defences as they
set up upon the trial at law upon their notes.    We need not
designate particularly the items of their defence which come
within the influence of the rule, as the view we take of the
case upon another point renders it unnecessary.    It is however, proper here to remark, that the loss they sustain by
reason of the failure of title to a portion of the land, which
they state at the sum of $6,589 08, and the liens which they
were compelled to discharge, and for which payments they
have a right to resort to the covenants in Henderson's deed,
say $2,172 33, as also the amount due Nelson out of the
notes assigned to Dunn, stated at $10,667 38, are all equitable defences, and could not have been allowed at law.    Dunn
v. White et al. 1 Ala. Rep. 645; 8 ib. 793.    So that an insufficient effort to plead them at law, cannot debar the defendants of relief in chancery.

6. It may be conceded, as a general rule, that where two
courts have concurrent jurisdiction over the same thing, the
one which is first possessed of the cause, has a right to proceed with it, and cannot be prohibited or restrained by any
other.    9 Wheat. Rep. 532; 5 Hump. Rep. 50; Pr. in Ch.
547.    But the defendants in error can derive no aid from this
principle, inasmuch as the original bill proposes to adjust the

whole merits of the controversy between the parties. The parties interested are brought before the court by Dunn's bill, and he proposes to adjust the deductions which Nelson and Hatch are setting up against him at law, and to apportion the same among the several holders of the notes assigned by Henderson, as the court may decide their equities may require.

The defendants submit to the jurisdiction which has thus attached to the subject matter, and averring their readiness and willingness to pay what may be found due to Dunn, after allowing them the abatements claimed, file their cross bill to obtain such allowance. Having obtained jurisdiction upon the application of Dunn, the court of chancery will proceed to do full justice between the parties, and restrain either of them from taking an inequitable advantage in the law court. Certainly Dunn cannot object that the defendants have no business in the chancery court, when they were brought there upon his bill, to which theirs is but a mode of defence.

7. The counsel for Dunn further contends, that the complainants in the cross bill should not be allowed to stop the proceedings at law as to any portion of the claims there sued for, because they do not offer to pay the sum which is confessedly due to Dunn.

The rule certainly is, that he who seeks the aid of a court of equity, must himself do what is equitable, and if he admits an amount due to the defendant, the court of chancery will not become active in his behalf, until he pays, or offers to pay, as the court may direct, the sum thus admitted to be due.

It seems, however, that in a bill for an account, it is not necessary for the plaintiff to offer to pay whatever balance may be found against him. 1 Smith's Ch. Pr. 8; Dan. Ch. Pr. 442; Colombian Government v. Rothschild, 1 Sim. 94, 105. But if such averment were necessary in the cross bill, which seeks an account of the sums to which the plaintiffs are entitled as abatements upon the notes held by Dunn, we think the allegation, that they are ready and willing to pay whatever sum may be due, after allowing them the abatements to which they may be entitled, is a substantial com-

pliance with the rule, inasmuch as it requires the action of the court to determine what sum is due.

8. Having settled the preliminary questions, we now come to the main matter in controversy, which involves the priority of the liens created by the several assignments of the notes by Henderson, and whether Nelson and Hatch should be allowed to abate the notes in Dunn's hands, or be turned round to the other notes subsequently assigned, to seek their indemnity.

Before proceeding, however, to inquire as to the respective equities of the parties with respect to the deductions claimed by Nelson and Hatch as connected with, or growing out of the original transaction between them and Hendorson, we should observe, that as to the claims secured by the assignment of the four notes to Dunn, and which were purchased in by Nelson, amounting, with interest, as averred in the cross bill, to $10,667 38, we think Nelson and Hatch have the clear right, under the present state of the pleadings, to have the collection of that sum enjoined. Dunn admits that Nelson has bought up the claims, but says he will not be entitled to the full amount of said claims, but only to a *pro rata* distribution. That the four notes assigned to him when collected, after the expenses incurred are deducted, will not be sufficient to pay all the debts they were intended to secure. The answer of Dunn does not say what the expenses are, or how much the notes will fall short of paying the several demands secured, nor what the amount of Nelson's *pro rata* share will be. He however avers, "that this *pro rata* he has no wish or desire to collect from said Nelson and Hatch." Now, as Dunn could have made this matter plain—as he is presumed to know the amounts of the expenses which are to be deducted from the proceeds of the four notes, and has failed to furnish any data upon which the court could act understandingly, we feel bound, so far as the injunction is concerned, to assume the amount stated in the cross bill, as the amount to which Nelson is entitled, and as to this sum, the chancellor should have continued the injunction. There is certainly no equity in allowing Dunn to collect funds which, when collected, the court the next moment would order to be refunded, more especially, as Dunn

protests that he has neither *wish nor desire to collect the same.*

9. What are the equities of the parties with respect to the defences of Nelson and Hatch, growing out of the original transaction, or consisting of sets-off and demands against Henderson, acquired by them since the negotiation for the property, and before notice of the assignment of their notes?

It has been decided by this court, that the assignment of the notes is *pro tanto* an assignment of the deed of trust designed for its security, and that the assignees are entitled to priority of payment out of the trust fund, in the order in which the assignments were made, and not according to the time of the maturity of the notes. Cullum et al. v. Erwin, adm'r, 4 Ala. Rep. 452; see also Hop. Ch. Rep. 569, 575; 2 Story's Eq. Jurisp. § 1233, p. 600, n. 1, 3d ed.

10. It is furthermore, a well established rule in equity, that if a party has two funds, a person having an interest in one of them only, has a right in equity to compel the former to resort to the other, if it is necessary for the satisfaction of both. Per Ld. Eldon, 8 Ves. jr. 388; 9 ib. 211; 15 ib. 399. The same rule seems to obtain, at least to a qualified extent, at law. See Nelson and Hatch v. Dunn, 13 Ala. Rep. 259; 12 Wend. Rep. 355; 6 Dana's Rep. 223; 2 Grattan, 44.

11. From the two foregoing propositions, it results, that if the lien, which the transfer of the four notes to Dunn created upon the trust effects, is prior to that created by the assignment of the four notes to Chalmers, and the notes held by Chalmers are sufficient to cover the demands asserted as abatements by the cross bill, (and the bill shows that they are ample,) then Nelson and Hatch should be turned round to the notes in Chalmers's hands for their indemnity. For if they are permitted to extinguish the demands in the hands of Chalmers, with a knowledge of the prior lien of Dunn, reserving their deductions and abatements as defences against Dunn's claim, they will by their election have destroyed the equitable relation of the holders of these notes, and have effectually defeated the prior lien, while the *puisne* incumbrancer has obtained full satisfaction. Such doctrine does not accord with the principles of equity.

12. If Dunn has the prior lien upon the trust effects for

the amount of the demands assigned by Henderson to him, it is clear that the sale of the trust property, by the makers of the trust deed, (Nelson and Hatch,) in extinguishment of junior liens, cannot defeat his right to satisfaction, especially when the sale was made with a full knowledge of his equity. The trust is still subsisting, and the property still bound. The rule is, that the vendee of the mortgagor must either pay the debt, or surrender the property charged with the lien, to be sold for its satisfaction.   Champion v. Brown, 6 Johns. Ch. Rep. 398.

13. It then becomes important to ascertain, which has the prior lien, Dunn or Chalmers; for upon this question depends, as we have attempted to show, the right of Nelson and Hatch to sustain their defences as discounts or sets-off, or equitable abatements upon the notes held by Dunn. There are nine notes outstanding, or were, before the negotiation between Chalmers, and Nelson and Hatch: one of these was assigned by Henderson to McCain, on the 1st September, 1840; four to Dunn, on the 1st of October, 1840; and the remaining four to Chalmers, on the —— day of October, *after the assignment of the notes to Dunn.*

It is, however, insisted, that the transfer to Chalmers has relation back, and should date from a previous transfer of the same notes made in June, 1840, by Henderson, to one R. W. Thomas, to secure the debt due from him to Chalmers, with other demands.   However this may be in fact, we cannot come to this conclusion from the record before us, to which our inquiry must be confined.   The cross bill, in setting out the answer of Chalmers to the original bill, gives the following account of the transaction :  " That Henderson came to his (Chalmers's) house in June, 1840, and informed respondent that, by reason of the failure of the firm of Henderson, Garrett & Co., (of which he was a member,) he feared that he was rendered insolvent.   That he had sold his property to Nelson and Hatch, and had assigned to Richard W. Thomas, of Mississippi, since deceased, notes Nos. 8, 9, 10, 11, in the bill mentioned, to pay respondent the debt due him and other creditors.   *That this respondent was dissatisfied with said arrangement,* and said Thomas subsequently declined acting.   That Henderson then went to North Caro-

lina, and on his return in *October*, said he had assigned note No. 3 to one N. L. Williams, and notes Nos. 4, 5, 6 and 7, to said Dunn, to collect, and pay certain creditors. That on receiving said information, he (Chalmers) became alarmed for his debt, and said Thomas declining to act as trustee, he insisted upon, and it was finally agreed that respondent should receive the notes Nos. 8, 9, 10 and 11, to pay his debts, and other debts secured in the assignment to Thomas." And after stating that Henderson had placed collaterals in the hands of one Martin, to be applied to the same demands to be paid by him, the answer states, "that in consideration of said debts due respondent, the said Thomas delivered to him the said notes, in the presence of Henderson, on the day and year aforesaid. That he received said notes *absolutely as his own*, subject to the agreement aforesaid, *free from the control of Henderson, and all other persons.*" He then goes on to state the cancellation of said four notes, by an arrangement between him and Nelson and Hatch, in the purchase from the latter of the whole of the trust property.

Was the assignment by Henderson to Thomas valid; and if so, what is the effect of the subsequent agreement between the parties? We regret that we are not more fully advised, as to the character of the assignment to Thomas. It is said, it was made to pay Chalmers, and other creditors. Now, whether the *other creditors* provided for, assented to this provision for their security, or whether the deed was such as to require their assent to render it valid, we are not informed. Certain it is, that Chalmers, upon being informed of the arrangement between Henderson and Thomas, was dissatisfied.

It is too well settled by this court, to be now the subject of controversy, that a voluntary conveyance to a trustee, by a debtor, for the security of debts, is invalid to pass the title to the trustee, until it is assented to, either expressly or impliedly, by the creditors whose debts are intended to be secured by it. Elmes v. Sutherland, 7 Ala. Rep. 262; Lockhart v. Wyatt, 10 Ala. Rep. 231; Hodge v. Wyatt et al. ib. 271; Pinkard v. Ingersoll et al. 11 ib. 8.

In the assignment made by Henderson to Thomas, we are not advised that any one of the creditors, except Chalmers, was ever informed of its provisions, and he, as we have

seen, expressed his *dissatisfaction*. Now, as there are no facts set out, from which we can imply the assent of the other creditors from the beneficial nature of the assignment, we must regard it as subject to Henderson's right of revocation. This right he exercised in the subsequent transfer, or assignment of the notes to Chalmers. This assignment then to Thomas, so far as disclosed by the cross bill, being inoperative, it follows, that Chalmers cannot date his equity from its creation. If, however, we allow that it was valid as to Chalmers, it was very clear it was abandoned, when the parties entered into new and different stipulations, so far as he is concerned.

The terms in which the agreement is couched, in the answer recited in the cross bill, explained by the subsequent act of Chalmers, in making an absolute disposal of the four notes, in the purchase of property for his own benefit, show that he acquired an interest in the notes, very different from that he possessed under the previous assignment to Thomas. We must intend that he acquired, by the new agreement, the absolute right to dispose of them for his own benefit; or, to use his own language, "he held them free from the control of Henderson, and all other persons." Such right is utterly inconsistent with the original agreement between Henderson and Thomas, so far as we can gather its provisions from the pleadings.

The office of trustee is one of confidence, and Thomas, the trustee, could not have delegated his trust, unless by express provision in the assignment, he was authorized to do so. A sale by him, or by Chalmers, (if he held these notes in trust,) for his own benefit, would amount to a breach of trust, for which they would have been liable to the *cestui que trusts*. Hill on Trustees, 175. Such breach of trust on the part of Chalmers we are not allowed to presume, but the contrary. And having this power to dispose of the notes to Nelson and Hatch, which was not conferred by the original assignment to Thomas, we conclude, he derived it by the agreement made in October, 1840, *after the* assignment *to* Dunn, and with a knowledge, as he states, of said previous assignment to Dunn. This subsequent agreement vests his interest, and must control his rights. Pinkard v. Ingersoll,

11 Ala. Rep. 8. It results, as a necessary sequence, from what we have said, that the assignment to Dunn, being prior in point of time to that of Chalmers, his equity is to be preferred, and the notes assigned to Chalmers being sufficient to cover the deductions sought to be enforced by Nelson and Hatch, they must seek their indemnity out of those notes. The injunction then was properly dissolved as to all the amount enjoined, except the $10,667 38, being the amount claimed by Nelson out of the proceeds of the four notes held by Dunn, and as to all but this sum, the decree is affirmed; but for this amount the decree of the chancellor must be reversed, and a decree here rendered, continuing the injunction as to the suit at law upon the last note, and enjoining so much of the judgment at law rendered upon the note last reduced to judgment, as, with the amount of the note in suit, will make the sum of $10,667 38. Let the appellees be taxed with the costs in this case.