The Paris Exchange Bank v. W. G. Beard et al.

Vendor's lien—All the purchase-money notes secured.—Three non-negotiable notes were made at the same time, in payment for two tracts of land sold to the makers, maturing at different times. The holder of the note first due brought suit to enforce the vendor's lien. The holders of the other notes intervened, insisting upon equal rights respectively in the land as security. The evidence showed that plaintiff's note was the first due, and had been first assigned by the payee: *Held*—

1. That the note maturing first was not, by reason of that fact, entitled to precedence in the appropriation of the proceeds of the sale of the land.

2. The priority in the assignment not having been alleged, its effect will not be considered on appeal.

Appeal from Lamar. Tried below before the Hon. R. R. Gaines.

The Paris Exchange Bank, claiming to be a private corporation under the laws of the State of Texas, brought suit on the 28th day of August, 1876, against G. and W. G. Beard, defendants, on a promissory note for the sum of one thousand dollars, dated August 25, 1873, and payable on or before the 1st day of January, 1875. Said note, as declared on, was payable to L. H. and D. C. Staten, and recited that

it was given as the second payment for two tracts of land, containing sixty acres in each tract. The petition was in the usual form of an action on a promissory note, with the additional allegations of its transfer to plaintiff by the payees on the — day of ——, A. D. ——; its delivery to plaintiff, and plaintiff's ownership thereof. The petition also alleged that the note was given as a part of the consideration for two certain tracts of land, which were described, and asked a foreclosure of the vendor's lien.

September 28, 1876, the defendants answered, by a general demurrer, a general denial, a plea of payment to the amount of $615.25, and a plea that plaintiff was neither the legal nor equitable owner of the note sued on, but held it as collateral.

· October 3, 1877, the defendants amended, in substance, that the note sued on was one of a series or set of notes— being three in all, and for $1,000 each—given by defendants to L. H. and D. C. Staten, at the same time and in one and the same transaction, for the purchase-money of the 120 acres of land described in plaintiff's petition; that the note due January 1, 1876, had been transferred by the Statens on April 22, 1874, to one J. T. Berry; that the note due January 1, 1877, had been transferred by the Statens on May 9, 1874, to Peet, Yale & Bowling; that the land had depreciated in value since the execution of the notes, and was not then worth over $2,000; that the said J. T. Berry and the said Peet, Yale & Bowling had respectively obtained judgment at the then term of the court on their said notes, with decrees of foreclosure; that the said two last-named debts stood upon equal, if not superior, footing with plaintiff's, and that defendants were not able to pay anything on these debts, outside of what the land would bring. Wherefore, in order that the proceeds of the said lien fund might be applied *pro rata* to the said three debts, the defendants prayed that the said Berry and the said Peet, Yale & Bowling might be made parties to the suit.                                        ♦

On the same day, October 2, 1877, the said J. T. Berry

and the said Peet, Yale & Bowling intervened in the suit by separate petitions, each one a substantial copy of the other, and both embracing the substance of the defendants' answer above referred to, the necessary changes being made. The intervenors prayed that the several liens be adjudged equal, and that the proceeds of the land be paid *pro rata* on the several debts.

October 5, 1877, plaintiff replied to these pleas of intervention, claiming to be the legal and equitable owner and holder for value of the note sued on; that he became such owner long before the maturity thereof; and that it was the first note falling due of the series of notes mentioned by the intervenors, and claiming priority of payment out of the proceeds of the lands.

On the same day, October 5, 1877, intervenors filed a general demurrer and a general denial to this replication.

October 6, 1877, the defendants filed a second amendment, claiming a credit of $240 on the note sued on.

The case was tried before the court without a jury, and November 2, 1877, the judge rendered his decision, giving plaintiff judgment for $969 against the defendants, adjudging that the liens of plaintiff and the several intervenors, as regards said land, were equal, and ordering the proceeds of the land to be paid *pro rata* on said claims. To this judgment plaintiff excepted, and brought the case into this court by appeal.

The error assigned was, "That the court erred in adjudging the respective liens of plaintiff and the several intervenors to be equal, and entitled to share *pro rata* in the lien fund."

*Wright & McDonald*, for appellant.—Under the assignment of error, appellant submits this proposition: Where a series of notes are given at the same time, falling due at different times, for the purchase-money of a tract of land, and such notes are assigned by the payee to different persons at different times, in case the proceeds of the land are insufficient to

pay all the notes in full, then the note which was first assigned, being also the first falling due, is entitled to priority of payment out of the common fund.

This proposition embraces the only point relied on by appellant. It was proved on the trial that the note sued on by plaintiff was given in part payment for the tracts of land described in plaintiff's petition; that at the time of the purchase of the land, four notes for $1,000 each were executed as the full consideration for the land; that the first note was paid off when it fell due; that the note sued on in plaintiff's petition was the second note, and was transferred to plaintiff for a full, fair, and valuable consideration, by written indorsement on the back thereof, on the 2d day of January, 1874; that intervenor J. T. Berry was the owner and holder of the third note executed for said land, and that Staten and wife, the payees, for a valuable consideration, transferred the same to said Berry on the 22d day of April, 1874; and that intervenors Peet, Yale & Bowling were the owners and holders of the fourth and last of said notes, and that the payees, Staten and wife, transferred the same to said Peet, Yale & Bowling for a valuable consideration on the 9th day of May, 1874. The statement of facts contains nothing as to the insufficiency of the proceeds of the land to pay all the notes in full; but the defendants, intervenor J. T. Berry and intervenors Peet, Yale & Bowling, asserted such insufficiency. The plaintiff claimed priority of distribution; the defendants and intervenors claimed equality of distribution; the court awarded equality. (White, Smith & Baldwin *v.* Downs, 40 Tex., 225; Griggsby *v.* Hair, 25 Ala., 327; Bank of Mobile *v.* P. & M. Bank of Mobile, 9 Ala., 645; Cullum *v.* Erwin, 4 Id., 452; McClintic *v.* Wise, 25 Grat., 448, cited in 18 Am. Rep., 694.)

*Maxey, Lightfoot & Gill*, for appellees.—The appellants complain, in two propositions under one assignment of errors, viz.: That appellant's note should have priority of payment

out of the fund, (1) because their note was the first note assigned by Staten and wife; (2) because their note was the first note falling due. To both of which propositions we must be allowed to object.

I. All the notes were assigned before maturity, and the assignees took with all the equities incident to the notes, without being charged with any notice of any superior outstanding equity in appellants, if, in fact, any existed.

The authorities cited by appellant were contests between the assignors and the assignees for superiority, and do not apply to this case; the leading idea in the cases cited being that the assignor of a note is liable on his assignment, and will not be heard to dispute with his assignee over the fund which he has assigned as security for the note.

II. The second proposition laid down as above by appellants, is directly decided against them in the authorities cited in their brief. (McClintic *v.* Wise, 25 Grat., 448; 18 Am. Rep., 694.)

III. Appellees submit the following proposition, contained in statement already made:

When a series of notes are given at the same time for the purchase-money of a tract of land, the notes falling due at different dates, the vendor's lien being reserved, they are equally secured in the common fund, and have equal rights to be satisfied out of it. (McDonough *v.* Cross, 40 Tex., 287; Delespine *v.* Campbell, 45 Tex., 628; Ellis *v.* Singletary, 45 Tex., 27; Cannon *v.* McDaniel, 46 Tex., 314. See, also, Cage *v.* Iler, 5 S. & M., 410; Henderson *v.* Herrod, 10 S. & M., 631; Parker *v.* Mercer, 6 How., (Miss.,) 320; Pease *v.* Bancroft, 5 Met., 90.)

GOULD, ASSOCIATE JUSTICE.—This is a contest between the holders of three several non-negotiable promissory notes or obligations, given at the same time, and in payment for the same land, but maturing at different dates; the appellant, the assignee of the note first due, claiming that his lien is en-

titled to priority. This is the sole ground of priority alleged in appellant's pleadings. It appears, however, from the evidence, that the note which appellant holds was first assigned by the payees; and it is claimed, in the assignment of errors and in argument, that this priority of assignment entitles appellant to a priority of lien.

The other notes were also transferred before maturity, and the holders claimed, and by the decree of the court were allowed, to share *pro rata* with appellants in the proceeds of the sale of the land.

Our opinion is, that the note held by appellants, though maturing first, was not, by reason of that fact, entitled to precedence in the appropriation of the proceeds of the land, but that the effect of the transaction originally was to secure all the notes by the same lien. Such is the conclusion to be implied from former decisions of this court, and such we think to be the rule best sanctioned by authority, and best founded in principle. (Cannon *v.* McDaniel, 46 Tex., 313; Tinsley *v.* Boykin, 46 Tex., 592; Ellis *v.* Singletary, 45 Tex., 27; McClintic *v.* Wise, 25 Grat., 463 (18 Am. Rep., 694); Nelson & Hatch *v.* Dunn, 15 Ala., 501.)

Indeed, in argument, appellant has not urged that ground of precedence, but seems mainly to rely on the priority of his assignment. He cites decisions from the courts of Virginia and Alabama which support his claim as the first assignee. (25 Grat., *supra;* Cullum *v.* Erwin, 4 Ala., 452; 9 Ala., 645; 25 Ala., 327.)

On the other hand, a different rule is maintained in the courts of Pennsylvania and Mississippi. (Donley *v.* Assignees of McKean, 17 Serg. & R., 402; Mohler's Appeal, 5 Barr, 421; Henderson *v.* Herrod, 10 S. & M., 631.)

We find it unnecessary to pass upon this question. The right of the appellant to relief must be maintained on the case stated in the pleadings. It nowhere appears in the pleadings that the assignment to appellants was prior to the assignments to the other note holders,—the intervenors.

Whatever may be the rule in such cases, the court did not err in disregarding, as grounds for relief, facts which, though proven, were not alleged; and therefore did not err in awarding equality to the assignees and holders of the three unpaid purchase-money notes. The judgment is affirmed.

AFFIRMED.