## CULLUM ET AL V. ERWIN, ADM'R.

1. A second morgagee may pay the amount due on the first mortgage, when it is susceptible of ascertainment, without an account between the parties, and file his bill for the sale of the mortgaged premises; when the decree will be for the sale of the premises to pay his debt and the redemption money paid by him— or if no obstacle exists to an account between the mortgagor and first mortgagee he may file his bill for foreclosure, making all persons in interest parties, and obtain a decree for a sale under both mortgages.

2. In such a case, if a dispute should exist between different defendants as to their respective rights to the avails of the mortgage, the Court could not settle the controversy between them upon their answers to the bill, but it would be necessary that a cross bill should be filed by them, or some of them, putting the matter in dispute in issue.

3. If, when the cause is ripe for a decree of foreclosure, the defendants claiming under a prior mortgage should not have taken the necessary steps to enable the Court to adjust their rights to the fund, the complainant should not be delayed for that cause, but the decree should be that the fund arising from the sale under the first mortgage be brought into Court, subject to its future disposition.

4. A defendant cannot in his answer, pray any thing but to be dismissed the Court; if he has any relief to pray, or discovery to seek, he must do so by a bill of his own.

5. The assignment of a note, secured by a mortgage on land, is, if not otherwise expressed, an assignment, *pro tanto,* of the mortgage also, and if the fund arising from the mortgage is not sufficient to pay the entire debt secured by it, the assignee will be entitled to a preference over the mortgagee.

6. Where several notes, secured by the same mortgage are assigned at different times, if the fund arising from the sale of the mortgaged premises is not sufficient to pay all the notes, the assignees will be entitled to priority of payment in the order in which the assignments were made, and not according to the time of the falling due of the notes, unless the assignor, at the time of the assignment, gave a preference to one or more in the mortgage.

ERROR to the Chancery Court at Mobile.

This was a bill filed by Henry Hitchcock, in his life time, to foreclose two mortgages executed by the Mobile Steam Cotton Press and Building Company, on a lot of land in the city of Mobile. The first mentioned mortgage being on land purchased by the corporation from Hitchcock, was given to secure the sum of fifty-five thousand eight hundred dollars, secured by five promissory notes, due at different periods—the other for fifteen thousand four hundred and thirty dollars seventy-two cents, secured by three promissory notes, was upon the same lot of land as the preceding, and also upon an additional adjoining tract, which had been purchased by the Company from one Charles Cullum, and to secure the purchase money of which a mortgage, prior to that of the complainant, had been executed. That on the first mortgage of complainant, there was due the sum of twenty-four thousand four hundred and eight dollars, and on the second five thousand one hundred and forty-three dollars eighty cents. That upon the entire lot the Company were building a large hotel, that for the prevention of waste and the completion of contracts for the erection of the building he had expended the sum of fifteen thousand dollars, and was entitled to a lien thereon for his reimbursement. That the complainant was informed that Cullum had transferred certain of the notes received by him from the Company to one Edward Harding, to the Bank of Mobile, to the Planters' and Merchants' Bank of Mobile, and to one John W. Freeman and that Reuben Barnes and James Barnes, claimed a lien on the building for work done thereon, and that one William Moore claimed the equity of redemption in the premises by virtue of a sheriff's sale.

These different persons are all made parties to the bill, and an account, foreclosure, &c. prayed. The different, mortgages, notes, &c. recited in the bill are made exhibits.

Freeman answered the bill, denying all knowledge of Hitchcock's mortgage, except from report; admits the execution of the mortgage to Cullum, by the Company, and that of the debt secured by that mortgage twenty-five thousand dollars had been transferred to him, and which he had transferred to the Bank of Mobile and the Planters' and Merchants' Bank of Mobile, and prays a decree that the mortgage remain undis-

turbed, except for the interest of those holding the notes to secure which it was executed.

Harding answers, admitting the facts stated in the bill ; that he holds one of the notes by transfer from Cullum, and secured by the mortgage to him for six thousand four hundred and sixty-seven dollars thirty-five cents, due 1st January, 1838.

An appearance was entered for the Planters' and Merchants' Bank, and the other defendants having failed to answer, the allegations of the bill as them, were taken as confessed, and the original mortgages, notes and bonds being produced and proven, were, with the bill and the answers of Harding and Freeman, referred to the Master to state an account.

The Master made a report setting out the dates of the notes and their amount, to secure which the several mortgages were made, with the other *liens* on the property amounting in all to $122,652 19—that the property could not be sold in detached parcels, and should be sold for cash, the money to be paid into Court and distributed by order of Court.

The report was confirmed and a sale ordered.

At a succeeding term a bill of review was filed by Isaac H. Erwin, administrator of Henry Hitchcock—alledging that since the making of the decree, the premises had been destroyed by fire, that the value of the mortgaged estate was so greatly reduced as not to be sufficient to satisfy all the demands ; that therefore it is impossible to adjust the rights of the parties as was contemplated when the decree was made—that the claim of Moore to the equity of redemption had been determined against him by the Supreme Court.

The prayer of the bill is, that the original bill be revived in his name, as administrator, that a reference be made to the Master to report what is due to the several parties under the mortgages, and in what order of priority they shall be paid—that a sale of the premises be ordered, &c.

The bill was answered by Harding, who insisted on the prior *lien*, the note held by him first falling due, and having been transferred before its maturity, and prays a decree accordingly.

The Planters' and Merchants' Bank also answer the bill, insist on a lien as the transferee of two of the notes from Cullum, one for $7,692 44, due 1st January, 1841, and one for $8,100

77 cents, due 1st January, 1842—that since the destruction of the building by fire, the security is greatly impaired, and prays that the sale be suspended until the maturity of his notes, or until he consents to such sale.

At the May term, 1841, by consent of the parties, the reference, report of the Master, and decree of sale was set aside, and the following order made as of the preceding term: "And now, at this day, it appearing to the satisfaction of the Court that the Mobile Steam Cotton Press and Building Company, Charles Cullum, the Bank of Mobile, Reuben Barnes and James Barnes, have failed to answer the bill and supplemental bill, it is ordered that they be taken as confessed, as to them, and it is further ordered that the matters contained in the bill answer and exhibits, be referred to the Register, with instructions to take testimony and report to this Court, at the present term if practicable, a plan of the premises embraced in the several mortgages respectively, the amounts due on the several mortgages, to whom due, the times when the several notes secured by the said mortgages came into the possession and ownership of the present holders, and the manner in which the said premises can most advantageously be sold to pay the said several liens."

On the 24th May, 1841, the Register made his report, setting forth that then there was due on the mortgage made to Cullum, exclusive of interest, the sum of $36,506 49, secured by five notes, the amount of each of which is stated, and the times when they severally fall due. The first in point of time being in favor of Harding, the two next in favor of the Bank of Mobile, and the two last in favor of the Planters' and Merchants' Bank. That that portion of the premises described in the mortgage to Cullum should be sold first, to satisfy said debt—that the note due Harding be paid first, from the proceeds of the sale, and that the priority of the others should take precedence from the time they fall due.

The report also proceeds to state that there is due the estate of Hitchcock, on his mortgages, $74,042 50, and that the lien of the workmen was discharged by the burning of the building.

The defendants having had two days notice of the report, and having failed to file any exceptions, the Court confirmed

the report, and decreed a sale of the premises, or so much as was necessary to satisfy the demand, in the manner laid down in the report, if not paid within sixty days, and from the proceeds of the sale to satisfy the debts as set out in the report.

From this decree this writ of error is prosecuted, and Charles Cullum and the Planters' and Merchants' Bank now assign for error—

1. That no notice was given by the Master of the time his report was made.

2. That the Master, in determining the priorities, decided on matters not referred to him.

3. That the reference to the Master was to ascertain facts to be adduced to the Chancellor.

4. That the Court erred in its decree, by settling questions between defendants on the mortgage to Cullum, and in giving a preference to Harding and the Bank of Mobile.

5. The Court erred in directing a sale of property to pay the claims of defendants, there being no cross bill filed and no issue joined.

6. The Court erred in granting a decree in favor of a defendant against his consent.

7. In decreeing a sale of premises for debts not due.

8. In not settling the mode of sale, and in adopting the report of the Master as to the mode of applying the funds.

9. In not dismissing the bill as to the defendants who disclaimed.

10. In reviving the suit as to some of the defendants, who are not mentioned in the supplemental bill.

CAMPBELL, for the plaintiffs in error, contended that the Court had no power, upon this bill, to adjust the conflicting claims of the different defendants to the amount due on the mortgage. The answers of Harding and the Planters' Bank were to the bill filed by the administrator of Hitchcock, with whom they had no dispute, they had therefore no power to litigate their claims in this suit, and should have filed a cross bill if they desired to do so.

The mortgage taken by Cullum was to secure the entire debt and therefore no priority of payment arises, from the fact that it was due by instalments. [17 Serg. & Rawle, 400; 1 Ver-

Cullum et al v. Erwin, Adm'r.

non, 39; 10 Pick. 129; 2 id. 123; 2 Wash. C. C. R. 47; 2 M. & S. 39; Story on Bail, 209; notes to 9th Cowen, 773; 2 Ala. Rep. 418.]

In support of the seventh assignment he cited 7th Ohio Rep. 2d part 232.

The inquiry before the Master was entirely insufficient to settle the question of priority between the defendants, which must depend on the contract between them and Cullum and not upon the date of the notes.

Gibbons, contra, contended that the authority cited from 2d Ala. Reports was not opposed to the decree made in this case. That was the case of a decree made in favor of a subsequent incumbrancer, on a bill filed by a prior incumbrancer, but here the bill is filed by the subsequent incumbrancer, and of necessity a decree must be made in favor of the prior incumbrancer. He referred to the case of Bloodgood v. McVay, [9 Porter, 547,] as decisive to show, that the time of the falling due of the notes ascertained the priority or right in a contest between different assigness.

The defendants had notice of the report after it was made and failing to take exceptions are concluded by it.

ORMOND, J.—This bill was filed by Henry Hitchcock, to foreclose two mortgages, one of which was subject to a prior mortgage in favor of one Charles Cullum. The original and supplemental bills recite this fact, and state that the debt to secure which Cullum's mortgage was executed, was payable in six instalments, evidenced by six promissory notes, the first of which had been paid to Cullum, and the remaining five transferred by him to different persons who are made parties. That in consequence of the destruction of the building by fire, the property secured by Cullum's mortgage would not be sufficient to discharge all the notes, and that it would be necessary to ascertain the priorities between the assignees of Cullum, which the Court is prayed to do and direct a sale.

The Court decreed that the assignees of the notes from Cullum were entitled to the priority of payment in the order in which the notes fell due, and that being the principal question

we will first address ourselves to the consideration of that matter.

It is perfectly well settled by the decisions of this and other Courts, that when a debt is secured by mortgage, the debt is the principal and the mortgage a mere accessory or incident, and that an assignment of the debt unless otherwise expressed will be, in equity, an assignment of the mortgage also. [Duval v. McLoskey, 1 Ala. Rep. 708; Emanuel & Gaines v. Hunt, 2 id. 190.] When, therefore, Cullum, the mortgagee transferred the second note falling due to Harding, if there was no express reservation of his interest in the mortgage, the assignment of the note was an assignment of the mortgage also, *pro tanto*, and if Cullum had retained the remaining notes and the mortgage property had proved insufficient for the payment of the entire debt, his assignee would have been entitled to priority of payment.

Being entitled to priority of payment against Cullum, he has the same right against the assignee of Cullum, as the latter could not convey a greater interest than he had himself. If each of the notes had been successively transferred in the same manner, each successive assignee would succeed to all the rights of the assignor at the time of the assignment, and this result would follow whether the notes were transferred in the order they fell due or not.

These consequences would flow from the mere assignment of the debt, which being the principal would, in equity, draw after it all its incidents, but there can be no doubt that one on assigning one of several notes secured by a mortgage, could, by a stipulation to that effect, reserve the mortgage as a security for the remainder of the debt; or on transferring several notes thus secured, he might determine which should have priority, if the property mortgaged was insufficient to pay all.

The case of Bloodgood v. McVay, [9 Porter, 547,] appears to go beyond the decision here made, and to determine that the assignee of the notes which first *fell due*, would have the prior right of payment. The Court places its judgment on the terms of the deed, which authorized a sale of the trust property on default of payment of either of the notes as they fell due. But in that case the assignment of the first was made prior to the assignment of the last note, and upon that which was the

real equity of the case the Court also rely, saying, that Bolling, (the *cestui que trust*,) could not transfer to the second assignee a greater interest than he had himself.

The same decision was made in Gwathmey v. Ragland, [1 Rand. 466,] under a precisely similar state of facts.

The same principle also governs the case of Van Rensalear v. Stafford, [1 Hop. C. 569,] where it was held that one having two mortgages of equal date on the same land, and having assigned both, that by the first assignment he gave his assignee a preference over himself, if the property was not sufficient to pay both debts, and that the second assignee could be in no better condition than he was.

An analagous principle was also settled in the case Clowes v. Dickinson, [5 J. C. R. 235,] where it was held, that there was no contribution between purchasers in succession at different times, of different parts of the estate of a judgment debtor.

The only authority brought to our notice adverse to the view here taken, is the case of Donly v. Hays, [17 S. & R. 400,] in which the majority of the Court held that where a mortgage was given to secure a debt due by eight different instalments, for the payment of which eight bonds were executed, five of which a mortgagee assigned to different persons at different times, and retained three himself, and the fund arising from the sale of the mortgaged premises having proved insufficient to pay the entire debt, that the respective assignees and the mortgagee were entitled to a *pro tanto* dividend.

We cannot yield our assent to this decision, and think that the dissenting opinion of Mr. Justice Gibson is the law of the case. It will also be observed that the principle upon which the majority of the Court rest their decision, compelled them to hold that priority of assignment, not only gave no preference as between the assignees, but also that the assignee acquired no preference as against the assignor. The vice of the opinion is, that the Court appear to consider the debt and the mortgage executed to secure its payment as having no necessary connection, when the well settled doctrine is, that the mortgage is merely an accessory or incident, and the debt the principal.

In the case at bar, it appears that after the transfer of the note to Harding, the four remaining notes were assigned to

Fontaine & Freeman, by whom the two first falling due were assigned to the Bank of Mobile, and the two last to the Planters' and Merchants' Bank.

Fontaine & Freeman, by the assignment to them of the residue of the debt by Cullum, became invested with all the rights of the latter, and according to the principles here laid down, might have given both their assignees equal rights in the mortgage, or they might have given to either a preference.

The counsel for the plaintiffs in error insist, that no decree can be made on this bill settling the rights of the defendants as between each other, and that to enable the Court so to decree a cross bill was necessary. If wrong in that view, he then insists the proof did not authorize the decree which was made.

In England, upon the foreclosure of a mortgage the property is not sold, but the decree is that the equity of redemption be barred. If the bill is filed by a second mortgagee, the decree is that the second mortgagee shall redeem the first mortgage, and that the mortgagor redeem him or stand foreclosed. [Fell v. Brown, 2 B. C. 276.] In this country, where the decree is for the sale of the mortgaged premises, there can be no doubt that the second mortgagee may discharge the prior incumbrance by paying what is due, when that can be correctly ascertained, and have a decree for the sale of the property, for his own debt as well as the redemption money paid by him; or it may be that in a proper case he might have a decree to sell subject to the first mortgage. Such seems to have been the opinion of the Chancellor, in the case of the Western Insurance Company v. The Eagle Fire Insurance Company, [1 Paige, 284.] But the former, as it might require the advance of a large sum of money, might be exceedingly inconvenient, not to say unjust, to the second mortgagee, and in many cases be impracticable, as the amount due could not be ascertained without an account between the mortgagor and first mortgagee, which they might refuse voluntarily to enter into. For the same reason the latter course might be unjust and oppressive to the mortgagor, as no one could purchase understandingly until the amount due on the first mortgage was ascertained.

We think, however, that where no obstacle exists to stating an account between the mortgagor and first mortgagee, as is

the case here, that the subsequent mortgagee may file his bill to foreclose, and have an account taken of the amount due on both mortgages, making all who have an interest parties, and obtain a decree for the sale of the property. If a conflict of interest should exist among the defendants, as to the disposition of the fund arising under the first mortgage, it would not be proper that the subsequent mortgagee should be delayed, pending a litigation between them in which he had no interest. If the defendants, prior to the decree for the sale of the property, had not taken the necessary steps to enable the Court to adjust the priorities between them, or to settle what portion of the fund each was to receive, the money due on the first mortgage might be placed subject to the control of the Court upon a cross bill to be filed, or petition, as it might direct.

A cross bill is necessary against co-defendants where they have opposite claims, which the Court cannot determine upon in the bill already filed, and where the determination of such clashing interests is still necessary to a complete decree upon the subject matter of the suit. [Coop. Eq. 84; Story's Eq. P. 316.]

The complainant in this case, by his supplemental bill, has stated the conflict of interest between the different assignees of the notes, to secure the payment of which the first mortgage was made, but he does not place himself in an adverse position to the defendants, nor has he any interest whatever in the controversy between them in regard to the fund which will be the product of the sale under the first mortgage. Nor can we see how, consistently with the rules of Chancery pleading, one defendant can set up an interest adverse to another, without himself becoming an actor. It is the general rule that a defennant cannot pray any thing in his answer but to be dismissed the Court; if he has any relief to pray, or discovery to seek, he must do so by a bill of his own. In this case the bill concedes that all the assignees of Cullum are entitled to the fund which will arise from the sale under the first mortgage, and thus far the Court may decree in favor of the defendants upon the bill. But if one or more of the defendants claim the entire fund, or a priority over the others, the matter must be put in issue, which can only be by a bill filed for that purpose; or if the controversy should arise after a decree in the princi-

pal cause, by petition to the Court in the nature of a cross bill, for the proper distribution of the fund, under the decree.

If it were conceded that the distribution of this fund could be made upon this bill, the necessary facts were not before the Court, to enable it to decide upon the conflicting interests of the defendants. It does appear from the testimony in the cause, that the defendant, Harding, has the prior right in the fund. By the testimony of the defendant, Charles Cullum, the first mortgagee, taken before the Master, it appears that the note held by the defendant, Harding, was negotiated to him on the 28th November, 1836, and that the remaining four notes were transferred to Fontaine & Freeman, on the 11th May, 1838. But it does not appear whether these notes were transferred by them to the two banks at the same or at different periods of time, or whether any special preference was given to one over the other, further than would result from priority of assignment, and without a knowledge of these facts no decree could be made settling the priorities between them, if the fund is insufficient to pay all.

The view here taken of the cause, renders it unnecessary to consider the other assignments of error, but it may be proper to remark that the objection that a decree for the sale of the mortgaged premises could not be made against the consent of the Planters' and Merchants' Bank, on the ground that the last note held by the Bank was not due, has ceased to operate by the maturity of the note pending the litigation.

It follows from this opinion, that as the defendants have not litigated their rights to the fund which will arise from the sale, under the first mortgage, that the Chancellor erred in attempting to adjust their respective priorities upon this bill, but as the complainant should not be delayed for that cause, the Court should have directed a sale of the property, and decreed that the fund which should be the product of the mortgage to Cullum, be placed under its control, that the defendants might litigate their respective claims to it.

The decree of the Court must therefore be reversed, so far as it affirms the Master's report, giving the defendants, Harding, the Bank of Mobile, and the Planters' and Merchants' Bank, assignees of Charles Cullum, precedence and priority of right

in the fund to be raised by the sale of the mortgaged premises, according as the notes severally fell due. And this Court proceeding to modify said decree, doth hereby order, adjudge and decree, that the monies arising from the sale of the premises conveyed by the Mobile Steam Cotton Press and Building Company to Charles Cullum, if not sufficient to pay and satisfy the amount ascertained to be due, by the report of the Register, to the defendants, Harding, the Bank of Mobile, and the Planters' and Merchants' Bank, be brought into Court, at the next term, to be subject to the further order of that Court.

The writ of error in this case is prosecuted by Charles Cullum in behalf of all the defendants, against Isaac H. Erwin, administrator of Henry Hitchcock, but under the rule of this Court, errors have been assigned only by Charles Cullum and the Planters' and Merchants' Bank. Erwin has no interest whatever in this controversy, which is between the defendants, who were assignees of the notes executed by the Mobile Steam Cotton Press and Building Bompany, to Charles Cullum—it would, therefore, be obviously improper that he should be taxed with costs. The object of this writ of error is to ascertain the priorities of the defendants, Harding, the Bank of Mobile, and the Planters' and Merchants Bank, to the fund arising from the sale under the mortgage executed to Charles Cullum, and as they were equally to blame in not putting the case in a condition, to enable the Chancellor to make a decree settling their relative rights, the costs of this Court must be borne equally by all, each paying one third part thereof.

Let the cause be remanded for further proceedings.