# CASES

## IN THE

# SUPREME COURT OF ALABAMA.

### DECEMBER TERM, 1877.

58   1
131  562

# Alabama Gold Life Insurance Company *et al. v.* Hall.

## *Bill in Equity to enforce Vendor's Lien.*

1. *Assignees of notes given for land; what determines priority of payment.*— Where the purchaser of lands executes several promissory notes for the purchase money, falling due at different times, and secured by mortgage, or other instrument creating a lien on the lands for their payment, an assignment of the notes is an assignment *pro tanto* of the security for their payment, in the absence of an express stipulation to the contrary ; and the several assignees are entitled to priority of payment, according to the date of their respective assignments, without regard to the time when the notes severally matured.

2. *Same.*—In such case, five of the notes being payable, one, two, and three months after date, and eleven payable five years after date, with interest payable semi-annually ; while the power of attorney to the vendor containing the power of sale, authorized him "to sell and convey the real estate, or so much thereof as may be necessary, upon default in payment of said notes or either of them, or the interest due thereon, as aforesaid"; and further provided that "in case he shall have negotiated any of said notes before their maturity, so that some other person may be the lawful holder thereof, then said lawful holder of said note or notes may execute all the powers herein conferred on said" [vendor] "so far as they may apply to such note or notes held by such person, and in case of the death of said vendor, his executors or administrators may execute all the powers herein conferred, so far as they may apply to any of said notes remaining assets of his estate; and the said person conducting said sale or sales shall, from the proceeds of sale, first pay the expenses of sale, then the interest and principal on the notes then due in the order of maturity, rendering the surplus, if any, to the said" purchaser: *held,* that these stipulations did not change the principle above stated so far as regards the notes last falling due.

3. *Usury; who can not set up.*—The payee of a valid promissory note, not tainted with usury, may lawfully sell and transfer it for less than the amount due by its terms; and a third person can not, in a contest with the transferee, be heard to insist that the transaction is usurious.

VOL. LVIII.

APPEAL from Chancery Court of Mobile.

Heard before Hon. H. AUSTILL.

This was a bill in equity, filed by the appellee, Henry Hall, against the appellants, to enforce a lien on lands for the purchase money. The facts of the case were thus stated by Mr. Justice MANNING:

"Nelson W. Perry, having bargained and sold large real estate, consisting of numerous parcels, in Mobile, to the Mobile and Montgomery Railroad Company, received its promissory notes for the price; the first five of which for $5,000 each, were made payable one, two, and three months after date, (two of them two months and two others three months after date,) to him or his order. He received also eleven other notes, five for $10,000 each, and six for $5,000 each, in all $80,000, all payable to him or his order, five years after date, with interest thereon semi-annually. They were dated November 1st, 1871. On the same day, he executed a conveyance of the property to the company, expressly reserving in the deed, a vendor's lien to secure payment of the purchase money, and took back from the company its letter of attorney to him; in and by which "for the purpose of enabling said Nelson W. Perry to enforce his vendor's lien aforesaid without resorting to the courts," he was constituted attorney for the company, and authorized in its name and stead, to sell and convey the said real estate, or so much thereof as necessary, in the manner prescribed, "upon default in the payment of said notes or either of them or the interest due thereon as aforesaid." And in case said "Perry [it further provides] shall have negotiated any of said notes before their maturity so that some other person shall be the lawful holder thereof, then said lawful holder of said notes or note, may execute all the powers herein conferred on the said Nelson W. Perry, so far as they may apply to such note or notes so held by such person. And in the case of the death of said Nelson W. Perry, his executors or administrators may execute all the powers herein conferred, so far as they may apply to any of said notes remaining assets of his estate. And the said person or persons conducting said *sale or sales*, shall from the proceeds of sale, pay first the expenses of the sale, then the interest and principal on the note or notes then due, in the order of maturity, rendering the surplus, if any there be, to the said Mobile and Montgomery Railroad Company. This letter of attorney and the deed were both recorded. The first five notes were paid, and are not in this case, except so far as the reference to them in the letter of attorney, may aid in the construction of that instrument."

"Early in May, 1872, Perry transferred and indorsed six of the eleven notes, four of $10,000 each, and two of $5,000 each, to appellee Henry Hall for the price of $44,000, Perry then having and retaining the other five notes. These he afterwards transferred and indorsed to other persons; and the persons and corporations to whom they respectively belonged are appellants in this suit. The eleven notes which matured in November, 1876, have not been paid, and Hall, the appellee, not having received any interest after November 1st, 1874, filed the bill in this cause, against the rail*road* company, and its successor, The Mobile and Montgomery Rail*way* Company, and also against the several holders of the other notes and other persons having interests in the subject. Hall claimed a right of priority against the other note holders, and prayed a sale of the property for the payment of the amount due to him. The bill contains other allegations and prayers, in respect to matters to be considered when the cause shall be heard on the appeal which Hall has also taken—but nothing that affects the question now presented. Answers having been filed and testimony taken, the chancellor decreed that the property be sold for the payment of the debts, and, among other things, ordered further, that Hall was entitled to priority of payment over the other note holders, and should be paid accordingly."

It was shown that Hall knew the contents of the deed and power of attorney, at the time of the transfer. Perry testified that he "intended that the notes should all hold liens as provided in the mortgage or power of sale," but he further testified that the subject "was not discussed between him and Hall, nor was the matter mentioned, and he did not know what Hall's expectations were in the matter." Hall paid Perry $44,000 for the notes, which were for $50,000, the latter collecting the interest up to the assignment.

The decree giving Hall a priority, is now assigned for error.

BOYLES & OVERALL, LEWIS M. STONE, JNO. T. TAYLOR, for appellants.—It is conceded that in the case of an ordinary mortgage, "priority of right of satisfaction results as a legal inference from priority of assignment, and can be repelled only by showing affirmatively that no such priority was intended to be conveyed." This priority, however, is a *mere implication*, and arises when nothing is said in the writing, or in the contract of assignment, showing a different intent. There is no room for implication, when the facts of the transaction are shown. Whatever rights Perry might create by the assignment, in the absence of the contract evidenced

by the note and power of attorney, it is certain that the con-
tract contained in the power of attorney and mortgage, cur-
tailed that power, and left him incapable of transferring
rights or priorities, as between persons to whom he trans-
ferred, different from those fixed in the contract for the secu-
rity of the notes. Whoever took one of the notes did so
with notice, or were charged with notice, that every other
transferred note would share equally with it. Perry might
interfere with his own rights or displace them by his con-
tracts of assignment, but he could not displace the contract
rights of others, created for them by the power of attorney,
in the contingency of a transfer.

Take the case of a railroad mortgage on real estate to
secure the payment of one hundred bonds, made at the same
time, with interest coupons attached to each bond payable
semi-annually. In such case it would not be contended, we
think, that a prior assignment of any one or more of said
bonds would carry with it the right of prior satisfaction.
1. Because by the terms of the contract the rights of the
parties were fixed and settled by it, in this, that the notes
were made at the same time and payable on the same day
for a purpose, that is to say, to enable the payee to make
the same use of the notes as could be made with bonds, with
interest coupons attached, in the market to raise money ; and
2, to repel by the terms of the contract any idea of a legal
inference that priority of assignment carried with it priority
of right of satisfaction.

There is, we submit, no distinction in principle between
the eleven notes and an equal number of railroad bonds with
interest coupons attached. In both cases they are all made
at the same time, and payable on the same day, and for the
same purpose, to enable the holder or payee to raise money
on them. The semi-annual interest on the notes is the same
in principle as the coupon to the bond.

"In the absence of any special agreement with the mort-
gagee, it would seem to be just and equitable that each note
holder should be entitled to a *pro rata* share, upon the prin-
ciple that equity delights in equality."—6 Cal. Rep. 480 ; 29
Ill. 92 ; id. 297; 38 Maine, 496 ; 10 S. & M. Rep. 531 ; 23 Cal.
Rep. 16 ; 8 Blackf. Rep. 449; 10 N. H. 246 ; 42 Ill. 272 ; 11
Md. 580 ; id. 211 ; 17 S. & R. Rep. 400 ; 9 Porter Rep. 547;
21 Vt. 331, 2d 550 ; 13 Ohio, 240.

The court will not fail to see that Perry and the railroad
expected and anticipated that these notes would go into dif-
ferent hands, and so they then and there settled the matter
of priority of lien; for they say, "any holder of *any one* of
said notes may execute the power, but whoever executes this

power *the proceeds* must be applied to the notes *in the order of their maturity.*"

All these notes now unpaid fall due on the *same day.* There were other notes falling due at different dates; these are all paid, so that there is no mistaking the object and purpose of this positive provision in the written understanding. Suppose the last assignee had filed his bill, or *had exercised the power of sale,* as the deed gives him the power, and does it make any difference whether he or Hall should make the sales? In both cases, are not the proceeds first to be applied to the notes first falling due, and then equally among those last notes all falling due on the same day?

What would have been the use of giving the last assignee the power of sale equal with the first, if he was to get nothing, and what would hav ebeen the use of contracting in the deed that those notes *falling due on same day* should share *pro rata,* if Perry or the court could set it aside at pleasure? We insist, therefore, if Perry had actually made by agreement any such priority for Hall, it would have been a violation of the written papers under which he held, and a gross fraud on the subsequent purchasers of notes, and Hall participating in it could not benefit by it. Perry was a trustee for the note holders, as fast as the notes were transferred by him. Those dealing with him had notice of the measure of his powers. Even if he had attempted to give a priority between different note holders, it would have been a breach of duty, and the first transferee could take no priority. Hall is the actor here. His contract with Perry was usurious, and he was not a *bona fide* purchaser and not entitled to a preference.

P. HAMILTON, *contra.*—When Perry assigned the notes to Hall, he thereby gave them a priority of satisfaction over the notes remaining in his hands. The lien of the remaining notes were thus subordinated to that of the notes transferred to Hall. The after assignment of these notes could not give the assignees any higher right than the assignor himself had.—4 Ala. 452; 9 Ala. 645; 15 Ala. 501; 25 Ala. 327; 1 Ala. 708; *White v. King,* 53 Ala. Perry was the owner of the whole debt, and the security given for its payment. What rule of law prevented him from giving one note priority over another whenever he chose to do so, in a contract with a third person? There is no analogy between the supposed case of the issue at different times of railroad bonds secured by the same mortgage, and the case presented by this appeal. In the first case, the *debtor* merely gives an evidence of debt, and transfers no security then held by him. This evidence

of debt was already clothed with a lien, and the lien passes, by the terms of the mortgage, to the holder of the bond. Here the *creditor* deals with *debt* and the *security* which belong to him, and by his own act postpones his lien to that of his transferee.

This case is very like that before the court in *Cullum v. Erwin*, 46 Ala., and can not be distinguished from it in principle.

MANNING, J.—A large amount being involved in this cause, it has been argued earnestly and ably; and it has received our careful consideration. In this State it is settled that where several promissory notes are given by the purchaser of property to his vendor, for instalments of the price, and a mortgage or other instrument is executed, whereby the property is charged with the payment of the notes, without any provision that the proceeds of the security shall be first applied to the discharge of one or more of the notes in preference of others, and the payee, while owning all the notes, indorses one or more of them to another person, without reserving to himself an equal or any other interest in the security, the indorsee becomes entitled to so much of the proceeds of the property thus charged, as will, if sufficient, pay the notes so indorsed, whether there remain anything more or not, for the discharge of the notes retained. And the law is not different though the note or notes which the payee assigns be of those that mature at a later day than those which he keeps. And, of course, an assignee of the notes that were thus retained, takes them with no greater security than was left to the payee who assigns them. The argument of ORMOND, J., in the well-considered case (though not the first on the subject) of *Cullum v. Erwin*, 4 Ala. 458, that a debt secured by mortgage is the principal, and the mortgage a mere accessory or incident; that an assignment of the debt, is, in equity, an assignment of the mortgage; that if there be several notes or bonds given for the debt, the assignment of one of these is, unless otherwise provided, an assignment *pro tanto*, of the assignor's interest in the mortgage; that if the mortgage prove insufficient for the entire debt, the assignee is entitled to payment in full from the proceeds of the mortgage, before his assignor, the mortgagee, shall receive anything; and that since the latter can afterwards transfer no greater interest than he has himself, if he shall transfer successively, in the same manner, the remaining notes to other persons, each successive assignee will acquire all the rights of the assignor at the time of assignment, and no more; a result which

would follow, whether the notes be transferred in the order in which they mature, or not. These consequences, the court held, flow from the mere assignment of the debt, unless it be otherwise stipulated. And in *The Bank of Mobile v. The Pl. & Mer. Bank*, (9 Ala. 648), the court, through the same esteemed judge, say: "Priority of right of satisfaction results as a legal inference from priority of assignment, and can be repelled only by showing affirmatively that no such priority of right was intended to be conferred."

In *Nelson & Hatch v. Dunn*, (15 Ala. 501) eleven notes had been executed, falling due in successive years, and secured by a deed of trust to a third person. The payee first assigned some of those that were made payable at a later day than others which were then retained; and afterwards he assigned some of these and others that remained. The court held that the same rule of priority, without regard to the order in which the notes matured, must be applied in this case, as in the others. And it was again affirmed and applied in *Griggsby v. Hair*, (25 Ala. 331) where the notes were secured by a bond which the vendor executed to make title, when the purchase money should be paid, the title being retained as security.

But counsel for appellants insist that according to the terms of the letter of attorney, and the understanding of the parties when the notes were indorsed to Hall, the rule of priority of payment, according to priority of assignment, should not obtain in this case. In regard to this understanding, if oral testimony alone be admissible to establish it, the evidence shows that it was only Mr. Perry's idea or opinion of the effect of what was done. He thought that the assignment of a part of the notes, operated as an assignment of the security *pro rata*, and not *pro tanto*, And he doubtless supposed that this was Mr. Hall's idea also. But no stipulation or condition of that kind is shown to have been assented to by Hall. It is a matter that was not even talked about. They both, evidently, were at that time, of the opinion that the security was ample for all the notes. Indeed, no apprehension appears to have then existed in regard to the solvency, or the sufficiency, of the company which made them. The legal inference from priority of assignment, therefore, is not repelled by the testimony.

Is it repelled by the contents of the writings? It has been argued that the transaction is like that by which a railroad company raises money to build or equip its railway, when it issues its bonds secured by a mortgage of the road and its appurtenances; in which case, it is, of course, intended that if the security be insufficient, the several holders of the

[Alabama Gold Life Insurance Co. et al. v. Hall.]

bonds shall be paid, without preference of any, *pari passu*. But, besides that this is an original issue of bonds, not till issued, having any value, by the mortgagor, all bearing the same date, and to be regarded, by relation, as issued at the same time, and not an assignment by a mortgagee of things which are of value while in his hands, and which he may dispose of in any manner he may choose,—the provisions of the letter of attorney show expressly that the security was not created for all the notes equally. The direction that they shall be paid "in the order of their maturity," entitled the holders of the notes payable one, two, and three months after date, to payment successively and in full, before anything should be applied to the discharge of the other eleven notes, though they and the former were all past due and unpaid, when the lien should be enforced. Such a prescribed preference destroys the likeness supposed to exist between this and the railroad transaction to which it is compared, and shows that the former was not intended to be of the same kind as the latter. This is made yet more manifest by the clausewhich provides, if the notes, or some of them, be *negotiated* before maturity, any person who may become the "lawful holder" thereof, shall have the right to execute the powers of sale and payment conferred on Perry—"so far as they apply to such note or notes so held by such person"—and by the further clause that in the event of Perry's death, his executors or administrators may also execute the same powers—"so far as they may apply to any of said notes remaining assets of his estate." In what railroad mortgage made to secure payment *pari passu*, of the bonds about to be issued, was authority ever given to the holders of some of the bonds to sell the property and pay themselves without regard to the rights of those who hold others of the same batch of bonds, bearing the same date, payable at the same time and in all respects alike? Whether it would be practicable, or not, under a letter of attorney framed as the present one is, for such powers as are conferred on Mr. Perry, to be executed, "without resorting to the courts," by persons not named in it, and whose right to sell real estate might depend upon its being proved by merely oral testimony, that they were "lawful holders" respectively, of some of the notes, and that Mr. Perry had *negotiated* them before maturity, is a question which, though it might have arisen, we have not now to determine. But it is obvious from the provisions referred to, that it was intended, if the necessity to sell should come, that the property might be sold in parcels ("so much thereof as necessary,") by different persons, to pay the note or notes, of which they might, respectively, be "lawful holders,"

and that they should severally have no authority to sell more than might be sufficient to pay expenses of the "sale or sales," and the notes held by them, unless they might do so to raise money enough to discharge some of the notes of earlier maturity and still unpaid—to which priority is given by the terms of the letter of attorney.

The office of the clause requiring payment to be made of the notes "in the order of maturity," is fully performed by its securing priority to the first five falling due.   In regard to the other eleven, there is no particular provision at all.  What remains of the security is to go to the payment of them— but whether *pari passu*, or to one before another, is not pre-scribed.   What then?  Suppose all the eleven notes re-mained in Perry's hands, and he, exercising the power con-ferred upon him, had sold the property and had realized from it, say $50,000; must this be credited—was it contem-plated that it should be, *pro rata* on each of the notes?  Might he not have cancelled as paid, so many of the notes as would make up that sum and retain the others as still entirely due? If he had done so, and had sued on these afterwards, could the debtor have pleaded that Perry had received moneys which, according to the terms of the instrument by which they were obtained, should have been credited on the notes sued on, and that he was, therefore, entitled to recover only the balance that would in that case have been due on them?  Or, is there anything in the instruments to prevent him, while holder of all the notes, upon transferring one of them, from writing on its back, that he indorsed and assigned it to A B *without any interest in the security provided, by deed and letter of attorney, for it and other notes?* or, *with a pro rata interest therein?* or, *with so much of the security as may be needed to pay the notes?*  These questions must evidently be answered in the negative.   And it, therefore follows, that when Mr. Perry indorsed the notes he negotiated to Hall, in such a manner as the law declares shall operate as a transfer, in equity, of an amount of the security equal to the amount of the notes, he thereby gave to those notes priority of payment out of the security, over the notes retained by himself and after-wards transferred to others.

The argument that the transaction between Perry and Hall was usurious, and the latter is therefore not entitled to recover the whole amount of the notes he purchased, is with-out foundation.   In the first place, the law does not prohibit the payee of a note, which is itself not tainted with usury, from selling it in good faith, for a less sum than the amount of it.—2 Pars. on Contr. 421.   And in the second place, if it did, strangers to the transaction, as the assignees of other

[Hall et al. v. Mobile & Montgomery Railway Co.]

notes are, cannot be heard to make that objection—*Fenno v. Sayre*, 3 Ala. 458; *Cook v. Dyer*, id. 643; *Harbinson v. Harrell*, 19 Ala. 753; *Cain v Grinon*, 36 Ala. 168.

Let the decree of the chancellor be affirmed.