### DAY v. GALLOWAY. (3 Div. 428.)

(Court of Appeals of Alabama. Nov. 21, 1922. Rehearing Denied March 6, 1923.)

1. **Bills and notes** ⊘337—Whatever puts purchaser on inquiry is good constructive notice.

Whatever is sufficient to put purchaser of notes on inquiry is good constructive notice.

2. **Vendor and purchaser** ⊘228(2)—Purchaser taking with notice of vendor's prior agreement to sell to another holds in trust for such other.

When vendor, after entering into a contract of sale, conveys the land to a third person, who has knowledge or notice of the prior agreement, such vendee takes it impressed with the trust in favor of the original vendee, and holds it as trustee and can be compelled to specifically perform the agreement by conveying the land, in manner and extent as vendor was liable to do had he not transferred legal title.

---

**3. Vendor and purchaser ⬤⇒261(4)—Assignee of note given for purchase money of land cannot stand in better position than payee or vendor.**

The assignee, or indorsee, of a note given for the purchase money of real estate, cannot stand in a better or higher position than the original payee or vendor of the property.

**4. Vendor and purchaser ⬤⇒261(4)—Agent's redress, for commissions evidenced by purchase money note transferred to him, was against vendor after abandonment of contract by parties.**

Land was sold under contract for cash payment and deferred payments represented by notes payable monthly, and it was provided that on failure of purchaser to make such payments possession should be surrendered and vendors retain sums paid as rent. A note was assigned to the agent, who negotiated the sale and knew the terms, as part of his commissions, and thereafter the contract, by agreement of vendor and purchaser, was abandoned, but before the note so assigned became due. *Held*, in the agent's action against purchaser on the note so assigned, that he could not claim as an innocent purchaser, and his redress was against vendor.

Bricken, P. J., dissenting.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action on promissory note by H. L. Galloway against J. K. Day. Judgment for plaintiff, and defendant appeals. Reversed and remanded. The facts sufficiently appear in the separate opinions of the court.

Certiorari denied by the Supreme Court in Ex parte H. L. Galloway, 209 Ala. 469, 96 South. 369.

L. A. Sanderson, of Montgomery, for appellant.

Payment of the purchase money for land sold under a bond for title cannot be enforced after rescission by the vendor. Frost v. Frost, 11 Me. 235; George v. Stockton, 1 Ala. 137; Winter v. Livingston, 13 Johns. (N. Y.) 54; Icely v. Grew, 6 N. & M.' 467; Frazier v. Ryan, 24 Ont. App. 441; Sterman v. Thornton, 3 Ky. Law Rep. 540; Henderson v. Beatty, 124 Iowa, 163, 99 N. W. 716; Hougen v. Skjervheim, 13 N. D. 616, 102 N. W. 311; 20 Am. Dig. 85; 39 Cyc. 1399.

Weil, Stakely & Vardaman, of Montgomery, for appellee.

The relationship of Vogel and Day was the same as that between mortgagor and mortgagee, the transfer by Vogel to Galloway placed Galloway to that extent in the same position as Vogel, and Vogel could not make any agreement with Day which would prejudicially affect the rights of Galloway,

without his consent. Lowery v. Peterson, 75 Ala. 109; Bankhead v. Owen, 60 Ala. 457; 27 Cyc. 1298, 1307; 39 Cyc. 1388.

MERRITT, J. Under the terms of the contract Vogel, exercising his option, agreed to the abandonment of the contract by Day, who according to the evidence told him (Vogel) between the 1st and 15th day of January that he (Day) was unable to meet the purchase money note due January 1st. That the actual possession was not delivered until about the 1st of February is of no consequence, as to all intents and purposes the facts show that the contract, as one of purchase and sale, was abrogated between the 1st and 15th of January, when Day told Vogel he could not pay for the property, and Vogel assented to a return of the possession, which was afterwards delivered to Vogel. Galloway does not, and in fact cannot, claim as an innocent purchaser of the note sued on. In the first place, only the purchaser of the property could claim such (39 Cyc. 1667), and he does not claim as the holder of the legal title, but merely as the holder of an equitable title, pro tanto. But, aside from this barrier, he drew the bond for title, knew of all of its conditions, and knew, or should have known, that Vogel had a right to do what he did— agree to an abandonment of the contract and accept a return of the property in case default was made in the payment of any one of said notes.

[1] It is laid down very generally in the books that whatever is sufficient to put the purchaser upon inquiry is good constructive notice. Scroggins v. McDougald, 8 Ala. 382. Galloway does not claim that he did not know that Day had made default in the payment of the January note, nor that Vogel had under the terms of the contract agreed to an abandonment of the contract, or had accepted a return of the property. It is rather uncertain on what grounds Galloway claims the proceeds of the February note, for surely under the facts in the case, he having accepted a transfer of this note at the time of the closing of the contract of sale and the execution of the bond and the notes, knew full well that in the very face of this note, and all others, was the condition that it was payable only in case he (Day) met all the terms of the contract, and the seller Vogel had not exercised his option to declare a forfeiture of the contract. These purchase money notes covered a period of about four years, one maturing each month. Suppose that Galloway had held the last note, and default had been made and all the facts existed just as the facts before us, would it be contended that at the maturity of the note held by Galloway he could have enforced the collection of the same? But to make the illustration more complete, suppose Galloway

had purchased from Vogel this property, and had taken a deed, to the same, instead of a transfer of one of the lien notes, would it be contended that he could defeat the claim of Day?

[2] The doctrine is well settled that when the vendor, after entering into a contract of sale, conveys the land to a third person, who has knowledge or notice of the prior agreement, such grantee takes the land impressed with the trust in favor of the original vendee and holds it as a trustee for such vendee, and can be compelled at the suit of the vendee to specifically perform the agreement by conveying the land, in the same manner and to the same extent as the vendor would have been liable to do had he not transferred the legal title. Dickinson v. Any, 25 Ala. 424; Meyer v. Mitchell, 75 Ala. 475; Ross v. Parks, 93 Ala. 156, 8 South. 368, 11 L. R. A. 148, 30 Am. St. Rep. 47; Forney v. City of Birmingham, 173 Ala. 3, 55 South. 618; 39 Cyc. 1650.

[3] It may safely be assumed, as a principle, that the assignee, or indorsee, of a note given for the purchase money of real estate cannot stand in a better or higher position than the original payee or vendor of the property. Coster v. Bank of Ga., 24 Ala. 37; 39 Cyc. 811; Hamaker v. Coons, 117 Ala. 603, 23 South. 655.

[4] To sustain Galloway's contention is to disarm Vogel of all rights under the contract prior to the maturity of the note assigned to Galloway. In other words, if Day had made default in the payment of the November note, Vogel, who was the owner of the bond for title and of the note, could not have proceeded to exercise his option under the contract and repossess the property, for the reason that Galloway had one of the purchase money notes maturing February 1st. Such we do not understand the law to be. Galloway's redress under the facts, here, is against Vogel, not against Day. The affirmative charge should have been given for the defendant.

The judgment of the circuit court will therefore be reversed and the cause remanded.

Reversed and remanded.

BRICKEN, P. J. (dissenting). On the submission of this cause in this court the record was assigned to the writer. The opinion originally presented in consultation, and which was prepared not without difficulty, was not concurred in by the other members of the court, MERRITT, J., writing for the majority.

The majority opinion does not state the facts fully, fairly or correctly, as shown by the record, and, bearing in mind that no good purpose is served by the opinion of an appellate court if it does not announce a rule of law applicable to the facts of that particular case, I shall hereby state the facts as they should be stated, fully, fairly, and correctly, and shall apply the law, as I see it, to these facts. The writer realizes that the views of an individual judge are usually of no concern to any one unless such views are adopted or concurred in by at least a majority of the court; and while the writer concedes that the questions of law involved are very close, I still maintain that the lower court took the correct view, even though the conclusion reached and the result thereof may appear as opposed to the real equity of the matters involved as shown by the facts. A fair, full, and correct statement of the facts and the law, as I understand it to be, is as follows:

On the 2d day of October, 1920, William Vogel and his wife, Magdalena Vogel, entered into a written contract, or bond for title, with J. K. Day, under the terms of which said Vogel and wife agreed to sell to said Day a certain house and lot in Bungalow City, a suburb of the city of Montgomery, Ala., at and for the sum of $2,750, of which the sum of $250 was paid in cash at the time of the execution of said bond for title, and the remaining $2,500 was payable in monthly installments of $50 per month, beginning November 1, 1920, and payable on the 1st day of each succeeding month thereafter until the entire amount of purchase money was paid. It was also provided under said bond for title that said balance of purchase money should bear interest and that said interest should be payable semiannually (every six months) with express stipulations in regard to said interest, and for the monthly installments of purchase money and for the semiannual installments of interest said J. K. Day, the vendee, executed his several negotiable promissory notes to Wm. Vogel, his vendor, payable as provided under said bond for title. Said bond for title also contained the following provisions:

"The party of the second part (Day) agrees that in case of failure to pay any one of said installments when the same becomes due, or in case of said party of the second part's (Day's) failure to comply with any terms of this agreement, or in case of failure to comply with any promises or agreements herein contained, then, in either event, at the option of the parties of the first part (Vogel and wife), the said party of the second part (Day) shall have no other or further interest in said property and shall immediately surrender possession of said property to the parties of the first part (Vogel and wife) or to be ousted therefrom by unlawful detainer proceedings, and the parties of the first part (Vogel and wife) shall retain all the moneys paid under this agreement by the party of the second part (Day) as rent of the premises, said amount being hereby agreed and declared by said parties of both parts to be the rental value of the premises."

And it was further provided under said instrument that, upon the payment of the

purchase money and a compliance with the conditions of the bond, Vogel and wife would execute to Day a warranty deed to the property involved.

In all of the negotiations leading up to the payment of the part of the purchase money for said real estate that was paid in cash and the execution of the bond for title and notes between the vendor and vendee, H. L. Galloway acted as the agent of Vogel, the vendor; and, for his services as such agent, it appears that Vogel agreed to pay him commissions, and it appears, from the admissions of appellant's counsel in his brief, that the commissions paid to Galloway by Vogel consisted of some part of the $250 cash payment, and also of two of the principal installment notes given for the deferred payments of the purchase price for said real estate, one of which said notes was due and payable on the 1st day of December, 1920, and which was paid at maturity, and the other being the note involved in this cause, and which was due and payable February 1, 1921. In other words, when the bond for title and the notes, all of which were prepared by said Galloway, were executed and delivered between Vogel, the vendor, and Day, the vendee, then said Vogel paid Galloway, his agent, for his services by delivering to him some portion of the cash payment and by transferring and assigning to him the two principal notes, for $50 each, and due and payable on the 1st day of December, 1920, and the 1st day of February, 1921. It further appears that said transaction between Vogel and Galloway was known to Day, and that Day paid direct to Galloway the amount due upon the note which was payable on the 1st day of December, 1920. There seems to be no dispute between the parties that Day either had actual knowledge that some time prior to the 1st day of December, 1920, Vogel transferred and assigned to Galloway said two notes, or that he had knowledge of such facts as, if followed up, would have led to his ascertaining that said notes had in fact and truth been transferred to Galloway by Vogel for a valuable consideration, and in such form and manner as to constitute Galloway the legal and valid assignee of said notes, and this prior to the 1st day of December, 1920.

When the note payable January 1, 1921, became due, Vogel, the payee of said note, being then its owner and holder, Day, the vendee of said real estate and maker of said note, was unable to pay the same, and according to the record in this case, went to Vogel on some day between the 1st and 15th days of January, 1921, and notified Vogel that he could not pay said note. Upon being notified that Day could not pay the note due January 1, 1921, Vogel, the vendor of the real estate in question, stated to Day that he (Vogel) would have to take the real estate back; and, thereafter, on the 1st day of February, 1921, the day the note owned by Galloway became due, or about that time, Day delivered the possession of the said real estate to Vogel, who received the same. When the note payable February 1, 1921, and which had been assigned to Galloway, became due, then Galloway, the assignee of said note, demanded payment; and, upon Day's failure to pay the same, suit was brought thereon on the 25th day of February, 1921; and Day defends upon the ground that, upon his failure to pay the note due January 1, 1921, and upon his restoring the real estate in question to Vogel, the vendor, there was such a failure of the consideration of the note involved in this cause as to prevent a recovery by Galloway, the assignee of said note.

The testimony, as set out in the bill of exceptions, is that Day went to Vogel after the maturity of the note which was payable on the 1st day of January, 1921, and stated to Vogel that he could not pay this note, and that Vogel stated that he would have to take the property back; and, thereafter, not earlier than February 1, 1921, the date of maturity of the note owned and held by Galloway, Day surrendered the house and lot described in the bond for title to Vogel, which was received by Vogel; and now Day asserts that he is not liable on the note which was owned by Galloway, because he says there was a rescission of the contract, or bond for title, entered into between Vogel and himself, to which rescission Galloway, in so far as the record discloses, was not a party, and of which he had no knowledge. It is earnestly asserted by appellant's counsel, however, that, inasmuch as Galloway prepared the bond for title and the purchase money notes, he knew at the time he took the assignment of the note involved in this cause that Vogel, the vendor, had the right to exercise an option under the bond for title in case of the nonpayment of the note which matured January 1, 1921, and take back the real estate involved, and, by so doing, work such a rescission of the contract of purchase as to defeat the right of Galloway to recover on the note which was payable February 1, 1921, and of which Galloway was the owner and holder.

The legal questions presented by this appeal have, I think, been the subject of judicial determination by the Supreme Court of Alabama. The following pronouncements, in my opinion, determine the rights of the parties on this appeal:

(1) The relationship between a vendor and his vendee, under a bond for title, is the same as between a mortgagee and mortgagor. Lowery v. Peterson, 75 Ala. 109; Bankhead v. Owen, 60 Ala. 457.

(2) The transfer of a note secured by a mortgage operates as a transfer to the assignee of the mortgage by which the debt is secured and authorizes the assignee to foreclose the mortgage, the debt being the prin-

cipal, and the mortgage its mere incident. O'Neal v. Seixas, 85 Ala. 80, 84, 4 South. 745.

(3) The assignment of one of several notes secured by a mortgage carries with it an assignment of a proportional interest in the mortgage, although there is no formal assignment of the mortgage itself, or any part of it. Cullum v. Erwin, 4 Ala. 452; Ala. Gold Life Ins. Co. et al. v. Hall, 58 Ala. 1, 6.

(4) Where the purchase money is evidenced by several promissory notes, an assignment of each purchase money note is pro tanto an assignment of the vendor's lien. Camody et al. v. Webster, 197 Ala. 290, 72 South. 622.

(5) When a vendor of real estate takes several notes for the purchase money and subsequently assigns a portion of them, then the assignee of the notes so assigned has a lien, to the extent of the notes so assigned, upon the property involved superior to that of the vendor under the notes retained by him. Where purchase money notes are assigned, the lien of the assignee takes precedence, according to the order of time in which the notes were assigned, without regard to the time when they mature. Parsons v. Martin, 86 Ala. 352, 5 South. 467; White v. King, 53 Ala. 162; Griggsby v. Hair, 25 Ala. 327.

The legal principles just announced were binding upon all parties and their privies to the contract, or bond for title, involved in this cause. It is true that Galloway, the appellee, had notice of all the terms of the contract, or bond for title. It is likewise true that Day, the appellant, was chargeable with knowledge that the notes described in the bond for title were negotiable instruments and that an assignment of any one, or more, of said notes would carry with it an assignment of all the rights and remedies of Vogel, his vendor, under said bond for title. It is therefore manifest, and I so contend, that when Vogel transferred the purchase money note, executed by Day and which was payable February 1, 1921, to Galloway, he not only gave to Galloway priority in the satisfaction of said note out of the real estate described in the contract, or bond for title, but he also armed him with full power and authority to collect the proceeds of said note, according to its terms and provisions, either by proceeding against the property itself, or by a suit at law against the maker thereof, and these remedies Galloway could have pursued concurrently, if he saw fit so to do. Micou v. Ashurst, 55 Ala. 607; Chapman v. Lee, 64 Ala. 483; Farmers' Savings Bank v. Murphree, 200 Ala. 574, 76 South. 932; Brewer v. Atkeison, 121 Ala. 410, 25 South. 992, 77 Am. St. Rep. 64. Upon his assignment to Galloway by indorsement of the note in question, Vogel, the payee of said note, lost all control over the same and could do nothing to defeat the rights of his assignee therein and thereunder. He had no right to collect the debt, nor to compromise the same, nor to discharge Day, the maker, therefrom. He armed Galloway with every right that he had under the bond for title, and the powers of Galloway under said instrument were superior, in some respects, to those retained. The appellant knew, or was chargeable with notice, that the appellee was the owner and holder of the note involved; at law, he was chargeable with notice of the rights of appellee, as assignee of said note, in the property sold and under the bond for title that was executed. Day, the appellant, was familiar with the terms and conditions of the sale. It appears that he was familiar with the provisions of the bond for title, and of the notes executed in compliance with the same. At law, he was chargeable with notice of the fact that Vogel could transfer and assign any, or all, of said notes, and that his assignment thereof would invest any assignee pro tanto, to the amount of the notes assigned, to exactly the same rights under the bond for title that Vogel himself had. In other words, the assignment by Vogel to Galloway of the note in question made Galloway a party to the bond for title, whose consent it was necessary to obtain for the contract of sale to be rescinded, if such rescission was to be held effective against Galloway. Vogel could not have received the amount for which the note assigned by him to Galloway was given, and Day could not have paid said amount to Vogel without a surrender of the note in question, so as to preclude Galloway from maintaining his rights under said note. The surrender of the possession of the property in question to Vogel by Day did not, in any manner, affect the rights of Galloway in said property, nor did it affect his remedies under the note in question. If the contract was rescinded between Vogel and Day, it did not amount to a rescission in so far as Galloway was concerned; such action being res inter alios acta, and did not preclude him from enforcing the note involved in this suit against Day, the maker thereof.

My opinion is that there is no error in the record, and that the judgment of the lower court appealed from should be affirmed.